*287 OPINION OF THE COURT
Simons, J.
Defendant has been convicted of one count of conspiracy in the fifth degree, six counts of offering a false instrument for filing in the first degree, and two counts of perjury in the first degree. The charges arise out of a scheme to defraud insurance companies by fabricating the injuries and treatment of automobile accident victims. The participants included doctors, insurance agents and others who conspired with the law offices of Stuart R. Kramer, P. C. from 1979 through 1984. Pursuant to the scheme, clients who retained the Kramer law firm following an automobile accident were referred to one of several chiropractors in the metropolitan New York area who then inflated the value of their services or, on instructions from the attorneys, referred the patient to Dr. Jesus Carmona, a radiologist, for diagnosis of nonexistent fractures (Carmona fractures). Dr. Carmona’s diagnoses were incorporated into the chiropractors’ medical reports to insurance companies and used by the Kramer attorneys to obtain inflated settlements for their clients. The principal of the firm, Kramer, has been convicted of various felonies and disbarred as a result of his conduct (see, People v Kramer, 132 AD2d 708, affd 72 NY2d 1003; Matter of Kramer, 120 AD2d 299). Several others also have been prosecuted.
Defendant was a lawyer associated with Kramer who spe *288 cialized in uninsured motorist cases. According to the evidence, he knowingly relied on the false medical reports to represent claimants at arbitration hearings and conduct settlement negotiations. He also agreed with Kramer that Stephen Kihl, another attorney in the Kramer firm, could use defendant’s home as a business address on retainer and closing statements filed with the Office of Court Administration. The arrangement allowed the firm to conceal its dual representation of both the driver and the passengers involved in an automobile accident by using Kihl’s name and defendant’s address for one client and the Kramer name and address for the other. The People further charged that defendant appeared before the Grievance Committee of the Second and Eleventh Judicial Districts on two occasions and testified falsely about this use of his address by Kihl.
Defendant’s principal arguments for reversal are that (1) the perjury counts against him were duplicitous, (2) the manner of their submission to the jury constituted error, and (3) the trial court’s failure to submit the question of venue to the jury on the conspiracy count constituted reversible error. We conclude that there was no error requiring reversal of the perjury convictions and that the error in failing to submit the question of venue to the jury was harmless.
I
A
The perjury indictment contained two counts charging that defendant testified falsely before the Grievance Committee on June 6 and June 23. A subsequent bill of particulars set forth three specifications of perjury for each date. Based on this, defendant contends that the charges were duplicitous because they averred more than one offense within a single count of the indictment in violation of CPL 200.30 (1). He relies on the reasoning in Matter of Di Lorenzo v Murtagh (36 NY2d 306) and the holdings of People v Davis (72 NY2d 32) and People v Keindl (68 NY2d 410).
In Di Lorenzo, we held that where a defendant was acquitted on two perjury counts, but the jury was unable to agree on those remaining, retrial on the open counts was not barred by double jeopardy if each allegedly perjurious statement involved separate acts justifying consecutive sentences. In reaching this result, the Court concluded that an indictment could *289 allege separate counts of perjury for each false statement arising from sworn testimony at two separate proceedings if each alleged perjurious statement related to a separate matter or act (Matter of Di Lorenzo v Murtagh, supra, at 310-312).
Relying on Di Lorenzo, defendant contends that separate perjurious statements made at the same hearing must be separate offenses and charged as such in separate counts of the indictment. Thus, he asserts it was improper for the prosecution to charge him with a single count of perjury for three allegedly false statements at each hearing. Although we stated in Di Lorenzo that ”[i]n charges of perjury * * * there may well be * * * discrete subjects as to each of which false testimony was given in sequence”, we also cautioned that separate offenses may not be proper where a series of questions relate to a single, integral inquiry (Matter of Di Lorenzo v Murtagh, supra, at 312). Di Lorenzo stands for no more than the proposition that several false statements made during one proceeding may or may not be separable into distinct events, depending on the subject matter of those statements.
Here, defendant was charged with two separate counts of perjury for testifying falsely on two separate occasions about a single subject, the use of his home address by Kihl for improper purposes. Although the bill of particulars asserted that three false statements were made during each proceeding, the statements related to the same subject matter. Thus, the elaboration of all three in one count of perjury was not improper because each count was predicated on defendant’s conduct at a single proceeding, the multiple falsehoods encompassed by each count were interrelated, and each of the falsehoods was intended to mislead the Grievance Committee about the illegal activities of the Kramer law firm.
People v Davis (72 NY2d 32, supra) and People v Keindl (68 NY2d 410, supra) do not hold otherwise. In Keindl, in discussing the reasons why a count that charges more than one offense is void for duplicity, we stated ”[t]he prohibition against duplicity furthers not only the functions of notice to a defendant and of assurance against double jeopardy, but also ensures the reliability of the unanimous verdict. If two or more offenses are alleged in one count, individual jurors might vote to convict a defendant of that count on the basis of different offenses; the defendant would thus stand convicted under that count even though the jury may never have reached a unanimous verdict as to any one of those offenses” (supra, at 418; see also, People v Davis, supra, at 38). *290 These concerns are not implicated in the case before us. The bill of particulars specified which statements made during the two proceedings were allegedly false, thus providing defendant with sufficient notice of the charges against him and assuring that he would not be reprosecuted for those statements. Moreover, the rendition of a separate finding on each false statement of perjury provided assurance that the jury verdict was unanimous as to at least one of them. Thus, defendant’s case does not violate the proscription of CPL 200.30 (1) as implemented by People v Davis (72 NY2d 32, supra) and People v Keindl (68 NY2d 410, supra; see also, United States v Berardi, 629 F2d 723, 729 [2d Cir], cert denied 449 US 995; United States v Isaacs, 493 F2d 1124, 1154-1155 [7th Cir], cert denied 417 US 976; Vitello v United States, 425 F2d 416, 418 [9th Cir], cert denied 400 US 822).
B
In submitting the perjury charges, the court directed the jury to deliberate and return a general verdict on each count. The verdict sheet submitted to them contained an entry for the general verdicts and also spaces for the jury to indicate a guilty or not guilty verdict as to each false statement alleged in the bill of particulars. Defendant asserts that this was error because it permitted the jury to enter special verdicts.
Although special verdicts or interrogatories are commonplace in civil cases, the Criminal Procedure Law makes no provision for them and they are generally disfavored in criminal trials (see, CPL 300.10 [4]; United States v Orozco-Prada, 732 F2d 1076, 1084 [2d Cir], cert denied 469 US 845; United States v Spock, 416 F2d 165; but see, CPL 300.10 [6]; 310.50; see generally, 3 LaFave & Israel, Criminal Procedure § 23.7 [d]; 23A CJS, Criminal Law, § 1402). The primary objection is that their form, a step-by-step progression of ”yes or no” questions, may inevitably lead the jury to a finding of guilt (see, United States v Spock, supra, at 182; United States v Palmeri, 630 F2d 192, 202-203 [3d Cir], cert denied 450 US 967). That danger was not present in defendant’s case, however, because each specification upon which the jury was asked to deliberate could lead to an independent finding of defendant’s guilt of perjury (see, Vitello v United States, 425 F2d 416, 418, supra; Arena v United States, 226 F2d 227, cert denied 350 US 954). Moreover, the use of such verdicts has been approved in criminal trials where the special findings benefited the defen *291 dant (United States v Spock, supra), were neither inherently prejudicial nor predeterminative of the jury’s verdict (United States v Palmeri, supra) or assisted the court (United States v Stassi, 544 F2d 579, 583 [2d Cir], cert denied 430 US 907 [for sentencing purposes]).
The special procedure used here did not prejudice the defendant and it assisted the court because it allowed the court to verify that the jury had followed its instructions to reach a separate, unanimous decision as to defendant’s guilt on each specification. It insured that any general verdict of guilty on the perjury charges was supported by a unanimous determination of the jury on at least one specification listed under each count. The procedure was also justified because it facilitated appellate review of the verdict in a situation in which the trial court entertained some reservations about the propriety of one specification alleged in the bill of particulars. Indeed, the Appellate Division found that the third specification as to each count submitted on the verdict sheet was not properly presented to the Grand Jury, and thus should not have been submitted for the jury’s consideration (People v Ribowsky, 156 AD2d 726, 727-728). The error did not result in reversal, however, because the Appellate Division was able to determine from the verdict sheet that the jury had returned a unanimous verdict of guilty as to at least one of the specifications under each count of perjury. Defendant was not prejudiced by the court’s procedure and the perjury convictions should be affirmed.
II
Finally, defendant claims that the court committed error in refusing his request to charge the jury on venue. Noting that Kings County jurisdiction over the conspiracy and false filing charges was premised solely on contested evidence of overt acts committed there by other alleged coconspirators, he claims that it is impossible to determine whether the jury accepted that evidence as true. The People concede the omission was error but contend that the Appellate Division correctly found the error harmless.
The defendant has the right at common law and under the State Constitution to be tried in the county where the crime was committed unless the Legislature has provided otherwise (People v Moore, 46 NY2d 1, 6; People v Goldswer, 39 NY2d 656, 659-661; NY Const, art I, §2). The burden is on the *292 People to prove by a preponderance of the evidence that the county where the crime is prosecuted is the proper venue because either the crime was committed there (People v Hetenyi, 277 App Div 310, affd 301 NY 757; see also, People v Hetenyi, 304 NY 80) or one of the statutory exceptions is applicable (People v Tullo, 34 NY2d 712). Conspiracy is such an exception: it may be prosecuted in the county in which defendant entered into the conspiracy or any county in which an overt act in furtherance of the conspiracy was committed by defendant or one of the coconspirators (CPL 20.40 [1] [b]; Penal Law §§ 105.20,105.25 [l]).[1]
Generally, it is for the jury to decide as a matter of fact, the place where the crime was committed (People v Hetenyi, supra) or any other fact relevant to venue (People v Tullo, supra). When defendant has requested that venue be submitted to them, it is doubtful that it would ever be proper for the court to decide the question as a matter of law (People v Moore, supra, at 7). Defendant contested venue in this case and it was error not to submit the question to the jury. However, such an error is subject to harmless error analysis where it appears from the verdict that the jury necessarily found that an overt act occurred in the county asserting jurisdiction (cf., People v Sosnik and People v Pazos, 77 NY2d 858 [decided today]). It is not enough that the record contains evidence of an overt act in that country — it must appear from the instructions or by necessary implication from the verdicts that the jury made a finding of proper venue. The error was harmless here because the jury passed on the question when it found defendant guilty of the perjury committed in Kings County (see, CPL 20.40 [1] [a]; Penal Law § 105.25 [1]).
Defendant maintains that the perjury charges cannot be used to sustain jurisdiction because those charges were not alleged as overt acts in the conspiracy indictment. An indictment for conspiracy need not allege every overt act, however, so long as it apprises the defendant of the charge and protects against future jeopardy (see, Wong Tai v United States, 273 US 77; United States v Lam Lek Chong, 544 F2d 58, 63 [2d Cir], cert denied sub nom. Liganoza v United States, 429 US 1101; United States v Cohen, 518 F2d 727, 733 [2d Cir]; United States v Kenny, 462 F2d 1205, 1213-1215 [3d Cir]). If the *293 indictment provides sufficient detail about the scope and nature of the conspiracy and the major overt acts committed in furtherance of it, then evidence may be offered at trial of related overt acts (see, People v Bongarzone, 116 AD2d 164, 171, affd 69 NY2d 892; United States v Cohen, 518 F2d 727, 733, supra).
The function of the overt act in a conspiracy prosecution is "simply to manifest 'that the conspiracy is at work,’ * * * and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.” (Yates v United States, 354 US 298, 334.) The overt act must be an independent act that tends to carry out the conspiracy, but need not necessarily be the object of the crime (see, People v McGee, 49 NY2d 48, 57-58; People v Bongarzone, 116 AD2d 164, 169, affd 69 NY2d 892, supra; People v Men-ache, 98 AD2d 335, 336-337; 2 LaFave & Scott, Substantive Criminal Law §6.5 [c], at 93-96). Acts of concealment occurring before, during or, in some cases, after the conspiratorial objective is achieved may constitute overt acts in furtherance of an ongoing conspiracy (cf., Grunewald v United States, 353 US 391; see generally, 2 LaFave & Scott, Substantive Criminal Law § 6.5 [e], at 107-108; Note, Acts of Concealment and the Continuation of a Conspiracy, 17 Ga L Rev 539).
Defendant’s appearance before the Grievance Committee was solely for the purpose of giving testimony concerning conduct relating to the insurance fraud and his testimony was intended to conceal and continue the fraud. Thus, the perjury constituted an overt act that tended to carry out the object of a continuing conspiracy. It was in furtherance of the conspiracy because concealment was central to the scheme. The Kramer office presented more than 1,000 fraudulent claims between 1979-1984 and concealment of these fraudulent claims and the procedure for presenting them was necessarily important to continuation of the conspiracy. Additionally, members of the firm testified that they had advised defendant to testify falsely before the Grievance Committee in June 1983 for this reason and there was undisputed evidence that a coconspirator attempted to bribe an Assistant District Attorney in September 1983 to halt the investigation. Moreover, the conspiracy was ongoing during the period when defendant testified because the evidence established that although the Kramer firm discontinued the use of defendant’s address in March 1983, fraudulent claims continued to be processed and settled and correspondence addressed to Kihl continued to be *294 received at defendant’s address months after defendant testified in June of 1983. Manifestly, therefore, defendant’s testimony before the Grievance Committee was given not merely to cover up a completed or abandoned scheme to defraud insurers: it was intended to assist in the continuation of that conspiracy and constituted an overt act in furtherance of it.
The perjury charges were not alleged as overt acts in the indictment but inasmuch as concealment was important to the insurance scheme and helped to define its nature and scope, defendant had sufficient notice that they would be part of the conspiracy case, and would constitute overt acts upon which jurisdiction could be predicated (see, People v Bongarzone, 116 AD2d 164, 171, supra; United States v Cohen, 518 F2d 727, 733, supra). Any doubt on the point is countered by a review of the first perjury indictment, and the court’s ruling dismissing it,[2] and by the fact that the second indictment for perjury was consolidated with the other charges.
Because the jury found defendant guilty of perjury in Kings County beyond a reasonable doubt and the perjury constituted an overt act in furtherance of an ongoing conspiracy, it necessarily follows that the jury passed on the question of venue and found by a preponderance of the evidence that at least one overt act in furtherance of the conspiracy was committed there. It could have done no more if properly instructed and the failure to do so was harmless.
We have examined defendant’s remaining points and find that none requires reversal of the judgment.
*295 Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. Jurisdiction over the perjury counts was premised on defendant’s perjurious testimony before the Grievance Committee in Kings County (see, CPL 20.40 [1] [a]).

. Originally there were two indictments against defendant. Indictment No. 4319/84 charged conspiracy, fifth degree, occurring between January 1, 1979 and June 30,1984, listing 46 claim settlements as overt acts, and seven counts of offering a false instrument for filing, first degree. Indictment No. 5140/86 charged conspiracy, fifth degree, occurring between March 1, 1983 and June 13, 1983, listing the two instances of perjury before the Grievance Committee as overt acts, and two counts of perjury. That indictment was dismissed, with leave to resubmit, because of an error in the instructions to the Grand Jury regarding accomplice testimony. The necessary implication of the court’s dismissal is that the two conspiracies listed in the indictments were one and the same, i.e., Attorney Kihl and Investigator O’Brien, were accomplices to the perjury and also coconspirators as a matter of law. The present perjury indictment covers the same subject matter as the dismissed indictment.