OPINION OF THE COURT
Leonard P. Rienzi, J.
The defendant has moved to dismiss the indictment based upon insufficiency of the evidence before the Grand Jury.
The evidence presented to the Grand Jury suggests that *985 Manuel Gomez sold vials of crack cocaine to an undercover police officer at approximately 6:30 p.m. on August 15, 1990, in the vicinity of Williams Avenue and Liberty Avenue in Brooklyn. The evidence established that Mr. Gomez was arrested in the same area within five minutes of the sale. After Gomez was handcuffed, a male officer searched him and removed keys from him. A member of the backup team utilized those keys to open the door to the basement apartment of 93 Williams Avenue.
Sergeants Poveromo and Nostramo, Police Officers Harkins and Foley, and Detective McDonald entered the basement apartment to search for the alleged seller’s "stash” (supply of narcotics), guns or other evidence of narcotics trafficking.
Detective McDonald went to the kitchen with Sergeant Nostramo and Officer Harkins. A 5 foot tall locked metal locker was found in the kitchen. Sergeant Nostramo and Officer Harkins utilized a hammer and other tools to break the lock off the locker. A quantity of jewelry and a large sum of money were found inside the locker.
In October 1990 evidence in the case against Mr. Gomez was presented to a Grand Jury. The undercover police officer who purchased narcotics and Officer Harkins testified. The Grand Jury indicted Mr. Gomez for the sale and possession of narcotics.
In his testimony before the Gomez Grand Jury on October 9, 1990, Officer Harkins testified that he arrested Mr. Gomez inside 93 Williams Avenue, that he recovered money and three vials of cocaine from his person, and that he recovered a bag with United States currency from the floor of Gomez’s apartment. He further testified that he had seen Mr. Gomez holding the bag and dropping it.
Between March 19, 1991 and March 22, 1991, the Grand. Jury which voted the instant indictment heard testimony from Mr. Gomez, Detective McDonald and Police Officer Cooper. On May 3, 1991, the District Attorney introduced the transcript of Harkins’ Grand Jury testimony (Oct. 9, 1990) in the Gomez case and charged the Grand Jury on the law.
The Grand Jury voted a perjury in the first degree charge against Officer Harkins.
The motion of defendant Harkins to dismiss the charge of perjury in the first degree is granted.
In the legal instructions to the Grand Jury on the perjury count, the District Attorney did not refer to specific testimony *986 or specific areas of testimony alleged to be perjurious. It is thus impossible to determine which specific testimony the Grand Jury found to be perjurious. No specifics appear until August 14, 1991, four months after the Grand Jury vote, when the District Attorney filed an answer to Harkins’ request for bill of particulars. The perjury count in the indictment thus constitutes a blank check, an open-ended indictment, permitting the District Attorney to decide what the Grand Jury found to be perjury instead of allowing the Grand Jury to make that decision itself. This procedure is void for vagueness, violates due process of law, and impairs the integrity of the proceedings.
The starting point for the analysis of an indictment is the New York State constitutional provision that, "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury” (NY Const, art I, § 6). In addition, the Constitution provides that an accused "shall be informed of the nature and cause of the accusation”.
The Court of Appeals recently summarized the three vitally important purposes of an indictment. " 'First and foremost, an indictment * * * provides] the defendant with fair notice of the accusations against him, so that he will be able to prepare a defense.’ (People v Iannone, 45 NY2d 589, 594.) Second, the indictment prevents the prosecutor from usurping the powers of the Grand Jury by ensuring that the crime for which defendant is tried is the same crime for which he was indicted, 'rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence.’ (Id.; see also, Russell v United States, 369 US 749, 770.) Finally, an indictment prevents later retrials for the same offense in contravention of the constitutional prohibition against double jeopardy (People v Iannone, supra, at 595)” (People v Grega, 72 NY2d 489, 495-496).
The first and third purposes of an indictment are clearly enhanced and strengthened through the use of the bill of particulars (see, CPL 200.95; People v Iannone, supra, at 597-598; People v Ribowski, 77 NY2d 284, 288-290).
Ribowski (supra) clearly demonstrates the manner in which the bill of particulars can rescue a facially suspect indictment for perjury. In Ribowski, defendant, an attorney, was indicted for two counts of perjury in the first degree relating to his testimony before the Grievance Committee at two separate proceedings. Although each perjury count of the indictment *987 was silent as to the specific testimony alleged to be false, the bill of particulars for each count contained three specifications of allegedly false testimony. The actual specifications in the bill of particulars had been read to the Grand Jury by the prosecutor in legal instructions to the Grand Jury at the time the Grand Jury voted upon the perjury counts.[1]
Defendant argued that the indictment was duplicitous in that each perjury count contained three separate and distinct perjury charges. Both the Appellate Division and the Court of Appeals rejected defendant’s contention. The Court of Appeals held that since the three specifications for each count occurred at a single proceeding, it was permissible to join them in a single count. It further held that the bill of particulars coupled with the indictment fulfilled the sufficient notice and assurance of no reprosecution purposes of an indictment.
Thus, that aspect of defendant Harkins’ motion to dismiss based on duplicitousness (multiple criminal specifications in a single count) must be denied based on Ribowski (supra). While the umbrella of Ribowski provides the District Attorney with limited protection for the procedure utilized in the instant case, Ribowski’s protection cannot be stretched to cover the stark lack of specificity presented to the Grand Jury at the time the Grand Jury voted the perjury count.
In Ribowski, the particulars of the alleged perjury were read to the Grand Jury at the time the Grand Jury voted. Those same specific false statements became the bill of particulars. Ultimately, these same specific statements were submitted to the trial jury in the form of a special verdict. Thus, the particular specifications submitted to the trial jury could be traced in an unbroken chain from their point of origin in the District Attorney’s specific legal instructions to the Grand Jury at the time the Grand Jury voted the indictment, to the bill of particulars to the special verdict. In the instant case, no specific allegedly false statements were submitted by the District Attorney for consideration by the Grand Jury at the time the Grand Jury voted the perjury charge. There is no record of specific testimony by Hárkins alleged to be false until August 14, 1991, four months after the Grand Jury voted. Thus, the specific aspect of Harkins’ testimony which the Grand Jury found to be false is unrecorded and unknown.
*988 The Grand Jury’s primary function is to "determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution” (People v Calbud, Inc., 49 NY2d 389, 394). In a perjury case, the Grand Jury cannot fulfill its function unless it is given the opportunity to decide whether identified, specific and particularized statements are false. "A grand jury, in order to make that ultimate determination, must necessarily determine what the question under inquiry was. To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him” (Russell v United States, 369 US 749, 770, supra).
The lack of specific allegations in the District Attorney’s charge to the Grand Jury on the perjury count renders it impossible to determine which specific statement or statements of Officer Harkins the Grand Jury found to be false. It is impossible to determine what the Grand Jury intended when it voted on the perjury charge, or whether the required number of grand jurors shared a community of purpose. Did the Grand Jury find that Harkins swore falsely with respect to both specifications[2] ultimately proffered to the court by the District Attorney? Did the Grand Jury find only specification number 1? Did it find only specification number 2? Did the Grand Jury find only a portion of specification number 1 and/ or a portion of specification number 2? What portion? Was the Grand Jury voting to indict based on a theory of perjury not contained in the specifications filed by the District Attorney four months after the Grand Jury voted? Was the Grand Jury voting to indict, for example, based on Harkins’ testimony concerning the location of the arrest (inside 93 Williams Avenue) rather than any other specification?
Since the Grand Jury presentation and legal instructions do *989 not answer these questions, the perjury count must be dismissed.
The People are granted leave to resubmit the dismissed count to a Grand Jury.

. See, brief for Kings .County District Attorney, at 33 and appendix B, People v Ribowski, 156 AD2d 726, affd 77 NY2d 284; see, brief for Kings County District Attorney, at 33, People v Ribowski, 77 NY2d 284, supra.

. Specification number 1: Harkins’ testimony that he personally searched Manuel Gomez and recovered three vials and a sum of United States currency. Specification number 2: Harkins’ testimony concerning the recovery of a bag of money from the floor of Mr. Gomez’s apartment and that he had previously seen Mr. Gomez holding that bag and then dropping the bag.