2000 ND 152

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Vance Owen STEEN, Defendant and Appellant.**

**Nos. 990332 to 990334.**

Supreme Court of North Dakota.

Aug. 18, 2000.

John R. Gregg, Special Assistant State's Attorney, Bottineau, for plaintiff and appellee.

Richard B. Thomas, Thomas & Thomas, Minot, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Vance Owen Steen appealed from criminal judgments entered on jury verdicts finding him guilty of negligent homicide, leaving the scene of an accident involving death or personal injury, and driving in violation of a restricted license. We conclude submission to the jury of an incorrect verdict form on negligent homicide was harmless error and the evidence was sufficient to support Steen's conviction for leaving the scene of an accident. We further conclude the trial court failed to comply with N.D.R.Crim.P. 32(c)(4)(E), and we remand to the court for the limited purpose of preparing and attaching its findings on controverted statements to the presentence investigation report. We affirm and remand.

I

[¶ 2] During the afternoon of September 17, 1998, Steen drove from his father's farmstead near Maxbass to Minot to visit

Darren Foster, a friend whose wife had given birth to a baby girl the previous day. Before going to the hospital, they met at a Minot restaurant and drank several beers. After visiting Foster's wife and baby, Foster and Steen left the hospital about 8:30 p.m. in Steen's car. Foster had decided to spend the night at Steen's home, rather than drive all the way back to his home in Rolla. Steen lived with his girlfriend in a trailer on his father's farmstead. Before leaving for Steen's home, they went to several Minot bars and drank more beer.

[¶ 3] Foster and Steen left Minot shortly before 1 a.m. According to Steen, he drove, rather than Foster, because "it was my car and I thought he was drunk—a lot drunker." They purchased more beer from an off-sale establishment and left, driving on back roads to Steen's farmstead. After reaching the junction of Bottineau County Highways 30 and 17C near the farmstead, Steen thought his cows might be loose and drove one mile north of the intersection. Steen discovered cows out on the road and attempted to chase them back into a fenced pasture with the car. Steen's car became stuck in the process, and after unsuccessfully attempting to free the car, the two men began to walk to the farmstead so Steen could use his father's pickup to pull the car out of the ditch. After walking about 200 yards south on a gravel road toward the intersection, Steen decided to take a shortcut and walk diagonally across a field directly to the farmstead about three-quarters of a mile away. Foster stayed on the road.

[¶ 4] Steen got his father's pickup, drove about one-half mile west to the intersection and proceeded north, traveling between 40 and 45 miles per hour. According to Steen, he saw an object lying on the road and drove past it. Realizing it could have been a body, he returned and found Foster lying on the road. Steen said when he found Foster on the road, Foster was gasping. Steen drove the pickup back to the farmstead, awakened his girlfriend and told her to call 911. Steen, who was hys-

terical, told his girlfriend he thought Foster had been run over. His girlfriend said Steen "thought he ran him over but didn't know for sure if he did." Steen also told his girlfriend he did not think he saw any other vehicles on the road. Steen awakened his father and they drove back to the scene and waited for emergency assistance. The ambulance arrived about 3:30 a.m., and deputy sheriff and highway patrol officers arrived shortly afterward. Foster was pronounced dead at the scene.

[¶ 5] An autopsy revealed Foster had been run over while lying on his back. He had tire marks on his hip, chest and arm. His ribs and sternum were fractured and his heart had been ruptured. According to the pathologist, death would have resulted within three minutes of the rupture.

[¶ 6] Steen was charged with negligent homicide under N.D.C.C. § 12.1–16–03, driving in violation of a restricted license under N.D.C.C. § 39–06–17, and leaving the scene of an accident involving death or personal injury under N.D.C.C. § 39–08–04. The jury found Steen guilty of all counts, and Steen was sentenced to five years of imprisonment, with two years suspended and five years of supervised probation beginning at the time of his release. Steen appealed.

II

[¶ 7] Steen argues his negligent homicide conviction should be reversed because the jury was given a general verdict form for negligent homicide which contained a special interrogatory inquiring whether the conviction was based in part on evidence of Steen operating a motor vehicle while under the influence of alcohol.

A

[¶ 8] At trial, the prosecutor requested the following verdict form be submitted to the jury.

We, the Jury duly impaneled and sworn in the above-entitled action, do find the Defendant, Vance Owen Steen,

GUILTY of the crime of negligent homicide, as charged in the Information.

If you find the Defendant, Vance Owen Steen, guilty of the offense of negligent homicide as charged in the Information, please answer the following question: Is the conviction based in part on evidence of Vance Owen Steen's operation of a motor vehicle while under the influence of alcohol? ANSWER: _____ Yes _____ No

The prosecutor argued the special interrogatory was appropriate because, under N.D.C.C. § 39–08–01.2(1)(a), a mandatory minimum sentence is required if a "person is convicted of an offense under chapter 12.1–16 and the conviction is based in part on the evidence of the person's operation of a motor vehicle while under the influence of alcohol or drugs...." Steen argued the interrogatory was inappropriate because it related to a sentencing matter which was for the trial court to decide at the time of sentencing. The trial court agreed with Steen's argument, rejected the verdict form with the special interrogatory, and ruled a general verdict form would be used. Nevertheless, the jury was inadvertently given the rejected form for its deliberations, and answered the special interrogatory in the affirmative.

[¶ 9] Generally, the rules of criminal procedure do not provide for special verdicts or general verdicts accompanied by special interrogatories as do the civil rules, and the only proper verdicts are guilty or not guilty. *State v. Morris,* 316 N.W.2d 80, 83 (N.D.1982). Special verdicts or interrogatories in criminal cases are disfavored because they may "coerce the jurors into rendering a guilty verdict," *State v. Sheldon,* 301 N.W.2d 604, 614 (N.D.1980), or "destroy[ ] the ability of the jury to deliberate upon the issue of guilt or innocence free of extraneous influences." *State v. Simon,* 79 N.J. 191, 398 A.2d 861, 865 (1979). *See also State v. Bartkowski,* 290 N.W.2d 218, 222 (N.D.1980); 3 Wright, *Federal Practice and Procedure: Criminal 2d,* § 512 (2d ed.1982); 26 *Moore's*

*Federal Practice* § 631.03[1] (3d ed.1997). Thus, N.D.R.Crim.P. 31(e) provides for a special verdict form only in very limited circumstances in criminal trials, relating only to certain defenses raised by the defendant and overt acts of treason. *See State v. Vetsch,* 368 N.W.2d 547, 552 n. 5 (N.D.1985). Several courts have held the use of jury interrogatories in criminal trials is not per se impermissible. Their use has been approved in criminal trials where the special findings benefit the defendant, were neither inherently prejudicial nor predeterminative of the jury's verdict, or assisted the court for sentencing purposes. *See, e.g., United States v. Pforzheimer,* 826 F.2d 200, 205–06 (2d Cir.1987); *Commonwealth v. Golston,* 373 Mass. 249, 366 N.E.2d 744, 752 (1977); *People v. Ribowsky,* 77 N.Y.2d 284, 567 N.Y.S.2d 392, 568 N.E.2d 1197, 1201 (1991). As the Minnesota Court of Appeals summarized in *State v. Robinson,* 476 N.W.2d 896, 903 (Minn. Ct.App.1991), *aff'd as modified,* 480 N.W.2d 644 (Minn.1992), "a special interrogatory may be used in a criminal case if it relates solely to sentencing and does not tend to lead a jury to a finding of guilt."

[¶ 10] In line with this reasoning, we have interpreted N.D.C.C. § 12.1–32–02.1, which provides minimum prison terms for armed offenders, to require the jury to make a special finding that in the course of committing the offense, the accused was in possession of a dangerous weapon, an explosive, or a firearm. *See, e.g., State v. Sheldon,* 312 N.W.2d 367, 370 (N.D.1981). This result was also called for by the statute, which specifically provides the mandatory prison terms apply "only when possession of a dangerous weapon, explosive, destructive device, or firearm has been charged and admitted or *found to be true in the manner provided by law....*" N.D.C.C. § 12.1–32–02.1 (emphasis added). On the other hand, the trial court rather than the jury, has the duty, in accordance with the terms of the statute, of determining dangerous special and habitual offender status under N.D.C.C. § 12.1–32–09.

*See, e.g., State v. Marshall,* 1999 ND 242, ¶¶ 6–8, 603 N.W.2d 878.

[¶ 11] We believe the trial court properly rejected the special interrogatory proposed by the prosecutor. Under N.D.C.C. § 39–08–01.2(1)(a) and (2), a court is required to give a mandatory minimum sentence of imprisonment if a negligent homicide conviction is based in part on evidence of the person's operating a motor vehicle while under the influence of alcohol, and is prohibited from suspending the sentence "unless the court finds that manifest injustice would result from imposition of the sentence." The statute is silent about whether a judge or a jury is to decide whether a conviction is based in part on evidence of a person driving while under the influence of alcohol. Punishment, however, is not the concern of the jury. *State v. Mounts,* 484 N.W.2d 843, 845 (N.D.1992); *State v. Huber,* 361 N.W.2d 236, 238 (N.D.1985).

[¶ 12] Because the statute provides no guidance and special verdicts and interrogatories in criminal cases are disfavored, we leave to the court, as part of the sentencing function, the duty to decide the factual issue whether a negligent homicide conviction is based in part on evidence of the defendant's operation of a motor vehicle while under the influence of alcohol. The judge who has presided over the trial is able to assess whether evidence of driving under the influence of alcohol has played a part in the conviction. As a matter relevant to sentencing, it is proper for the judge, rather than the jury, to decide the question.

### B

[¶ 13] Although the verdict form with the special interrogatory was erroneously submitted to the jury, an error is harmless and not grounds for reversal under N.D.R.Crim.P. 52(a) if it does not prejudice substantial rights of the accused. *State v. Eugene,* 536 N.W.2d 692, 696 (N.D.1995). Our objective in reviewing nonconstitutional trial error is to determine whether the error was so prejudicial that substantial injury occurred and a different decision would have resulted without the error. *State v. Murchison,* 541 N.W.2d 435, 442 (N.D.1995).

[¶ 14] The error in submitting the incorrect verdict form to the jury was not prejudicial to Steen because the form instructed the jury to answer the interrogatory only if the jury found Steen guilty of negligent homicide. A jury is presumed to follow instructions provided by the court. *State v. Osier,* 1999 ND 28, ¶ 24, 590 N.W.2d 205. Because the interrogatory chronologically followed the general verdict, the jury necessarily found Steen guilty of negligent homicide before addressing the interrogatory. Because the jury was first required to make a finding of guilt before the interrogatory could be answered, we conclude the interrogatory could not have led to a finding of guilt. *See State v. Schmitz,* 559 N.W.2d 701, 706 (Minn.Ct.App.1997); *Robinson,* 476 N.W.2d at 903.

[¶ 15] We reject Steen's argument that the erroneous verdict form tainted the verdict itself because the prosecutor questioned witnesses about his consumption of alcohol the evening before the accident. The inadvertent admission of the incorrect verdict form did not open the door for the jury's consideration of evidence of Steen's alcohol consumption because evidence of intoxication can be relevant in a negligent homicide case regardless of the mandatory minimum sentence provisions of N.D.C.C. § 39–08–01.2(1)(a) and (2). This Court has held evidence of intoxication is relevant in a negligent homicide case if it is indicative of a defendant's condition at a relevant time. *See State v. Winkler,* 552 N.W.2d 347, 356–57 (N.D.1996); *State v. Smaage,* 547 N.W.2d 916, 921–22 (N.D.1996); *State v. Tranby,* 437 N.W.2d 817, 822–24 (N.D. 1989); *State v. Erickson,* 241 N.W.2d 854, 861–62 (N.D.1976). Under the circumstances, evidence of driving under the influence is relevant to both the crime

charged and the imposition of a mandatory minimum sentence. The submission of the incorrect verdict form does not constitute reversible error.

### III

[¶ 16] Steen argues the evidence was insufficient to support his conviction for leaving the scene of an accident involving death or personal injury. Although Steen concedes he did not move for judgment of acquittal under N.D.R.Crim.P. 29, and therefore failed to preserve the issue of sufficiency of the evidence for review, *see, e.g., City of Bismarck v. Towne,* 1999 ND 49, ¶ 8, 590 N.W.2d 893, he argues the insufficiency of the evidence is obvious error affecting substantial rights under N.D.R.Civ.P. 52(b).

[¶ 17] To establish obvious error, a defendant must show an error that is plain and affects substantial rights. *State v. Burke,* 2000 ND 25, ¶ 16, 606 N.W.2d 108. This Court will reverse a conviction on the ground of insufficient evidence only if, after viewing the evidence and all reasonable inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *City of Jamestown v. Neumiller,* 2000 ND 11, ¶ 5, 604 N.W.2d 441.

[¶ 18] Under N.D.C.C. § 39-08-04(1), the driver of any vehicle involved in an accident involving death or personal injury must "immediately stop or return with the vehicle as close as possible to the scene of the accident and in every event shall remain at the scene of the accident until that driver has fulfilled the requirements of section 39-08-06." Those requirements under N.D.C.C. § 39-08-06 include that the driver "shall give the driver's name and address ... as well as the registration number, of the vehicle." Steen contends the prosecution failed to prove that he was the driver of the vehicle involved in the accident, and assuming he was the driver, the prosecution failed to prove that he did not provide the information required by N.D.C.C. § 39-08-06.

[¶ 19] There is substantial circumstantial evidence Steen drove the vehicle involved in the accident. The prosecutor presented evidence that skid marks near Foster's body were similar to the tire track width of Steen's father's pickup. Steen testified he drove the pickup 40 to 45 miles per hour and told his girlfriend he thought he ran over Foster "but didn't know for sure...." Steen told his girlfriend he saw no other vehicles on the road and testified Foster was gasping when he found him on the road. The pathologist testified Foster would have died within three minutes from when his heart was ruptured. This evidence is sufficient to establish Steen ran over Foster with the pickup. Under N.D.C.C. § 39-08-06, Steen was required to provide the driver's name and address and the registration number of the vehicle. Yet, at the scene of the accident, Steen did not acknowledge during discussions with law enforcement and ambulance personnel that he was the driver of the vehicle which struck Foster. A highway patrol officer testified Steen denied driving his father's pickup to where the body was located.

[¶ 20] We conclude the evidence is sufficient to support the jury's verdict finding Steen guilty of leaving the scene of an accident involving death or personal injury. *See State v. Engel,* 289 N.W.2d 204, 210-11 (N.D.1980); *State v. Manning,* 148 N.W.2d 818, 820 (N.D.1967). Steen has not shown plain error affecting substantial rights.

### IV

[¶ 21] Steen argues this case should be remanded for resentencing because the trial court violated N.D.R.Crim.P. 32(c)(4)(E) by failing to make a finding on controverted information in the presentence investigation report or state that it would not be considered in sentencing.

[¶ 22] The presentence investigation report contained comments, designated as

"[c]ollateral information," from Steen's ex-wife, Stacey Myers. Myers reported that Steen's drinking was a "major factor" in their divorce, related several incidents about his violent conduct when he drinks, and claimed he does not provide adequate care for their daughter when he exercises visitation. After reviewing the presentence investigation report, Steen's attorney objected to Myers' comments and opinions in a letter to the trial court. In the letter, the attorney informed the court he was attending a fourth order to show cause hearing to attempt to enforce Steen's visitation rights and related Steen's version of incidents surrounding the divorce. The attorney said "[t]o place *any* reliance on the statements of [Myers] would be giving credence to a person whose credibility is questionable and bias[ ] evident." (Emphasis in original). At the sentencing hearing, Steen's attorney again objected to the court's consideration of Myers' comments, characterized them as "lies," and argued she had interjected herself in the case to attempt to terminate Steen's parental rights to his daughter.

[¶ 23] Before pronouncing sentence, the trial court said:

> [A]s to the presentence investigation report—and I believe it's even stated in here that the information was provided to parole and probation from Ms. Myers, was collateral information. Obviously, when parole and probation do these reports, they're looking for what they feel is any relevant information for the Court to consider.
>
> And you know, I don't ... know a lot of the history behind Ms. Myers and Mr. Steen, but obviously, if parole and probation thought that it was important information, they include it. And I'm not going to go back and revisit their divorce and their family situation here, but I do think if it's something that's presented in the presentence investigation report, obviously, the parole and probation looked at it and thought it was relevant for sentencing concerns.
>
> So, to address your issue, Mr. Thomas, in regards to that, you know, it's in there, and it's what's been presented to me as something I looked at.... I don't know, I don't give it too much weight other than what, I guess, what points that the parole and probation officer made in the report.
>
> ....
>
> It's just all information, and it's something that the Court has been presented in this case. And I've had to deal with looking at it, and weighing the credibility and giving it the appropriate weight.

[¶ 24] A trial court has a duty to address alleged factual inaccuracies in a presentence investigation report under N.D.R.Crim.P. 32(c)(4)(E):

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or any of the information summarized, the court, as to each matter controverted, shall make (i) a finding as to the allegation, or (ii) a determination no finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of those findings and determinations must be appended to and accompany any copy of the presentence investigation report later made available to the State Parole Board or to the pardon clerk.

[¶ 25] We have not interpreted the requirements of N.D.R.Crim.P. 32(c)(4)(E), but its similar federal counterpart has generated a significant amount of case law. *See* Annot., *Sufficiency of federal trial court's compliance with requirements of Federal Rules of Criminal Procedure 32(a)(1)(A) and 32(c)(3)(D), that defendant has had opportunity to read and discuss presentence investigation report, and that written record of findings made in response to objections to report be appended to and accompany report, before imposing sentence,* 101 A.L.R. Fed. 308,

§§ 5–15 (1991). The purposes of the rule are two-fold: (1) to protect a defendant's due process right to be sentenced on the basis of accurate information; and (2) to provide a clear record for appellate review of the disposition of controverted facts in the presentence report, which, in turn, reduces the likelihood that subsequent appellate or administrative decisions will be made based on improper or incomplete information. *United States v. Grant,* 114 F.3d 323, 327 (1st Cir.1997); *United States v. Gerante,* 891 F.2d 364, 367 (1st Cir. 1989).

[¶ 26] Federal courts require strict compliance with the rule, and failure to comply will result in remand. *See United States v. Rico,* 895 F.2d 602, 603 (9th Cir.1990); 26 *Moore's Federal Practice* § 632.02[8][c] (3d ed.1997). Rule 32 does not "require a catechismic regurgitation of each fact determined and each fact rejected." *United States v. Gaytan,* 74 F.3d 545, 557 (5th Cir.1996) (internal quotation marks omitted). A court may make implicit findings on disputed factual questions by accepting the government's recommendations at the sentencing hearing, *see, e.g., United States v. Cruz,* 981 F.2d 613, 619 (1st Cir.1992); *Gerante,* 891 F.2d at 367, or by adopting factual findings in the presentence investigation report. *See, e.g., Grant,* 114 F.3d at 327; *Gaytan,* 74 F.3d at 557.

[¶ 27] The trial court's ruling on Steen's objections to the presentence investigation report is ambiguous at best. We cannot determine if the trial court believed Steen's version or Myers' version of the factual statements made in the report, or if the court disregarded the objectionable material. The trial court failed to comply with the rule. However, noncompliance with the rule does not automatically entitle the defendant to resentencing. *See Cruz,* 981 F.2d at 619.

[¶ 28] Although a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a presentence investigation report without inquiry, if those facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. *See United States v. Puig–Infante,* 19 F.3d 929, 943 (5th Cir.1994). A defendant's rebuttal evidence must demonstrate that the information contained in the presentence investigation report is materially untrue, inaccurate or unreliable, and mere objections do not suffice as competent rebuttal evidence. *See United States v. Huerta,* 182 F.3d 361, 364 (5th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1238, 146 L.Ed.2d 105 (2000); 26 *Moore's Federal Practice* § 632.02[8][d] (3d ed.1997).

[¶ 29] In this case, Myers reported that Steen "has received numerous charges of Minor in Possession of alcohol and that he has had alcohol related accidents in which the charges were either reduced or dropped altogether." Steen's attorney argued this statement did not "jibe with the offenses listed by the probation officer." But the probation officer listed two possession of alcohol offenses, in which the dispositions were "not listed" and "dismissed," and a driving under the influence charge which was reduced to a reckless driving charge. The discrepancy, if any, is insignificant. The remainder of Steen's objections consisted of his attorney's characterization of Myers' statements as "lies," and the attorney's written explanation of the child custody dispute and his client's version of the incidents. The controversy essentially focused on the credibility of Myers versus the credibility of Steen.

[¶ 30] On this record, we believe the trial court would have been legally justified in either rejecting Myers' statements in the presentence investigation report and accepting Steen's version, or accepting Myers' statements and rejecting Steen's version. Alternatively, if the trial court did not consider Myers' disputed statements in sentencing, Steen suffered no harm. Steen's sentence is in the permissible range. Under these circumstances, resentencing is not appropriate. *See United*

**564**

*States v. Santana–Camacho,* 931 F.2d 966, 969–70 (1st Cir.1991).

[¶ 31] However, the trial court has not made a written record of its findings and attached it to the presentence investigation report where it could prove useful to either Steen or to the State Parole Board. We therefore remand for the trial court to prepare a written record of its findings on the controverted statements and attach it to the presentence investigation report. *See Cruz,* 981 F.2d at 619; *Santana–Camacho,* 931 F.2d at 970.

[¶ 32] We add the following caveat:

> When a district court confronts a challenge to the accuracy of information in a presentence report, it should explicitly state for the record either its finding regarding the challenge, or its decision not to take the matter controverted into account when imposing sentence. By adhering to this modest requirement, the district courts can help reduce unnecessary appeals based on the parties' misunderstanding of the record.

*United States v. Ibarra,* 737 F.2d 825, 827–28 (9th Cir.1984) (footnote omitted).

### V

[¶ 33] The criminal judgments are affirmed, and we remand for the limited purpose of preparing and attaching findings to the presentence investigation report.

[¶ 34] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.