================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 189
The People &c.,
         Appellant,
      v.
Dwight R. DeLee,
         Respondent.




         James P. Maxwell, for appellant.
         Philip Rothschild, for respondent.
         Lambda Legal Defense and Education Fund, Inc. et al.;
District Attorneys Association of the State of New York; New York
State Association of Criminal Defense Lawyers et al., amici
curiae.




READ, J.:

         A Syracuse grand jury indicted defendant Dwight R.

DeLee for second-degree murder as a hate crime (Penal Law §§

125.25 [1], 485.05 [1] [a]), second-degree murder (Penal Law

§ 125.25 [1]) and third-degree criminal weapon possession (Penal

Law § 265.02 [1]).  Defendant was tried in County Court before a

jury, which rendered a verdict convicting him of the lesser

- 1 -

included offense of first-degree manslaughter as a hate crime (Penal Law §§ 125.20; 485.05 [1] [a]), acquitting him of the lesser included offense of first-degree manslaughter (Penal Law § 125.20) and convicting him of the charged weapon possession offense.  Upon hearing the jury's verdict, defense counsel requested that the judge poll the jury and allow him to make "a motion before the jury is dismissed, at the Bench."  After polling the jury, the judge held a sidebar, and counsel argued that the jury's verdict was inconsistent.  After stating that he understood counsel's argument, the judge announced that he would call the jurors back to the courtroom and dismiss them, adding, "Is that acceptable?"  Counsel replied, "Yes, Judge."  When the jurors returned to the courtroom, the judge noted that he had "not excuse[d] them until [he] discussed the issue brought up by [defense counsel] with the lawyers."  Recognizing that he had not previously taken the jury's verdict on ordinary second-degree manslaughter, the judge elicited from the jurors that they had acquitted defendant of that offense.  He then dismissed the jury.

Prior to sentencing, defendant moved pursuant to CPL 330.30 (1) to set aside the verdict as repugnant.  Defendant contended that, in light of the elements of first-degree manslaughter as a hate crime and ordinary first-degree manslaughter as charged to the jury, the verdict was repugnant because the two crimes shared the same basic elements, and therefore, as a matter of law, he could not be guilty of first-

degree manslaughter as a hate crime and yet not guilty of ordinary first-degree manslaughter.  The People countered that, because the judge instructed the jurors that a person commits first-degree manslaughter as a hate crime by committing first-degree manslaughter and additionally selecting the victim based on perceived sexual orientation, the jury must have concluded that ordinary first-degree manslaughter was akin to a lesser included offense of the hate crime, such that a conviction of the hate crime rendered a conviction of ordinary first-degree manslaughter superfluous.  In support of this theory, the People presented an affidavit of the jury's foreperson.

At sentencing, the judge denied defendant's motion to set aside the verdict on repugnancy grounds without elaborating on his reasoning.  Defendant appealed, and on July 19, 2013, the Appellate Division, with one Justice dissenting, modified the judgment on the law by reversing defendant's conviction for first-degree manslaughter as a hate crime and dismissing the first count of the indictment, and otherwise affirmed (108 AD3d 1145 [4th Dept 2013]).  The Appellate Division concluded that defendant had preserved his repugnancy claim by arguing that the verdict was repugnant prior to the jury's discharge (id. at 1146).  The court then explained that the verdict was repugnant because

> "[b]y acquitting defendant of manslaughter in the first
> degree, the jury necessarily found that the People
> failed to prove beyond a reasonable doubt at least one
> element of manslaughter in the first degree. To find

defendant guilty of manslaughter in the first degree as a hate crime, however, the jury must have found that the People proved beyond a reasonable doubt all of the elements of manslaughter in the first degree, plus the added element that defendant selected the victim due to his sexual orientation. It therefore follows that the verdict is inconsistent" (id. at 1146-1147).

The Appellate Division continued that, "even assuming, arguendo, that the [trial judge] suggested to the jurors in its instructions that they could convict defendant of only one of the manslaughter in the first degree charges, . . . such a 'suggestion' would be immaterial inasmuch as the Court of Appeals has made clear that we may 'look[] to the record only to review the jury charge so as to ascertain what essential elements were described by the trial court'" (id. at 1147, quoting People v Tucker, 55 NY2d 1, 7 [1981]).  The court pointed out that "even crediting the theory of the dissent that ordinary or plain manslaughter in the first degree is a lesser included offense of manslaughter in the first degree as a hate crime, the verdict is nevertheless inconsistent" because the jury "'necessarily decided that one of the essential elements [of ordinary or plain manslaughter in the first degree] was not proven beyond a reasonable doubt'" (id., quoting People v Muhammad, 17 NY3d 532, 539 [2011]).

The dissenting Justice rejected defendant's claim on the merits (id. at 1151 [Peradotto, J., dissenting]).  Stating that the critical inquiry was whether the jury, "as instructed," reached an inherently self-contradictory verdict, she concluded

that the jury's verdict here was not repugnant (id. [internal quotation marks and citation omitted]).  The People appealed to us by permission of the dissenting Justice (21 NY3d 1047 [2013]), and we now modify.

This case presents a straightforward application of Tucker and Muhammad, which clearly contemplate that when jury verdicts are absolutely inconsistent, the verdict is repugnant. The rationale for the repugnancy doctrine is that the defendant cannot be convicted when the jury actually finds, via a legally inconsistent split verdict, that the defendant did not commit an essential element of the crime (Muhammad, 17 NY3d at 539; Tucker, 55 NY2d at 6).  Given that premise, "a verdict is repugnant only if it is legally impossible -- under all conceivable circumstances -- for the jury to have convicted the defendant on one count but not the other," and, "[i]f there is a possible theory under which a split verdict could be legally permissible, it cannot be repugnant, regardless of whether that theory has evidentiary support in a particular case" (Muhammad, 17 NY3d at 539-540).

Accordingly, repugnancy does not depend on the evidence presented at trial or the record of the jury's deliberative process, and "[t]he instructions to the jury will be examined only to determine whether the jury, as instructed, must have reached an inherently self-contradictory verdict" (Tucker, 55 NY2d at 8).  In making these determinations, it is inappropriate

for the reviewing court to "attempt to divine the jury's
collective mental process" (id. at 4). "Jurors are allowed to
compromise, make mistakes, be confused or even extend mercy when
rendering their verdicts" (Muhammad, 17 NY3d at 544).

Here, the jury's verdict was inconsistent, and thus
repugnant. The jury convicted defendant of first-degree
manslaughter as a hate crime, but acquitted him of first-degree
manslaughter. In Muhammad, a very recent decision, we used the
following hypothetical case to demonstrate how repugnancy
analysis works:

> "[Consider] a case where charge 1 requires proof of
> elements A, B and C; [and] charge 2 requires proof of
> elements A, B, C and D. If the jury convicts a
> defendant on the second charge, thereby finding that
> all four elements have been proven beyond a reasonable
> doubt, but acquits on the first charge, the verdict is
> repugnant since the acquittal would necessarily involve
> a finding that at least one of the essential elements
> of charge 2 - either A, B or C - was not proven beyond
> a reasonable doubt" (Muhammad, 17 NY3d at 540 [internal
> quotation marks omitted]).

This is exactly what, in fact, happened in this case.
All of the elements of first-degree manslaughter are included in
the elements of first-degree manslaughter as a hate crime. Thus,
to find the defendant not guilty of first-degree manslaughter
necessarily means that at least one of the elements of first-
degree manslaughter as a hate crime was not proven beyond a
reasonable doubt.

The People's reasoning to the contrary is not
persuasive. The foreperson's affidavit is the opinion of just

one juror, and, in any event, cannot be considered under our longstanding precedent. Further, while the People argue that County Court's charge allowed the jury to consider the hate crime as a separate track or inquiry from the non-hate crime, the judge specifically instructed the jurors to consider the non-hate crime charges separately and independently from their hate crime counterparts.

Next, we reach the question of the remedy. In Muhammad, we stated in a footnote that the remedy for a repugnant verdict was "dismissal of the repugnant conviction" (17 NY3d at 539 n 1). In other words, where the jury's verdict proves to be repugnant, the appellate court must reverse the defendant's conviction and dismiss the count of the indictment underlying that conviction. This was dictum since we held in Muhammad (and its companion case) that the verdicts were not, in fact, legally repugnant. Moreover, we cited as authority People v Hampton (61 NY2d 963, 964 [1984]) and People v Carbonell (40 NY2d 948, 948-949 [1976]), which do not discuss the proper remedy for repugnant verdicts. Essentially, these brief, memorandum decisions merely state that the repugnant charges should be dismissed. Carbonell, moreover, pre-dates Tucker, the case in which we first articulated our approach to repugnancy claims.

In Muhammad, we noted that the purpose of New York's repugnancy doctrine was, in part, to "ensure that an individual is not convicted of 'a crime on which the jury has actually found

that the defendant did not commit an essential element, whether
it be one element or all'" (Muhammad, 17 NY3d at 539, quoting
Tucker, 55 NY2d at 6).  While such a rationale is consistent with
the remedy of dismissal of the repugnant charge, we have further
recognized that a repugnant verdict does not always signify that
a defendant has been convicted of a crime on which the jury
actually found that he did not commit an essential element.
Indeed, as we pointed out in Tucker, a jury "may freely reject
evidence and exercise its mercy function" (55 NY2d at 8).  In
other words, regardless of the court's instructions, a jury is
"free to extend leniency and may decide not to convict a
defendant of one or more charges" (Muhammad, 17 NY3d at 539).  In
Tucker, we observed that, where a repugnant verdict was the
result, not of irrationality, but mercy, courts "should not . . .
undermine the jury's role and participation by setting aside the
verdict" (55 NY2d at 7).  But if this mercy function is the cause
of a repugnant verdict, the remedy of dismissal of the repugnant
conviction is arguably unwarranted.  Indeed, it provides a
defendant with an even greater windfall than he has already
received.

There is no constitutional or statutory provision that
mandates dismissal for a repugnancy error.  Given that New York's
repugnancy jurisprudence already affords defendants greater
protection than required under the Federal Constitution (see
Muhammad, 17 NY3d at 538), permitting a retrial on the repugnant

charge upon which the jury convicted, but not on the charge of which the jury actually acquitted defendant, strikes a reasonable balance.  This is particularly so given that a reviewing court can never know the reason for the repugnancy.  Accordingly, the People may resubmit the crime of first-degree manslaughter as a hate crime to a new grand jury (see People v Mayo, 48 NY2d 245, 253 [1979]).

Finally, we again emphasize that where "a trial court finds that an announced verdict is repugnant, it may explain the inconsistency to the jurors and direct them to reconsider their decision" (Muhammad, 17 NY3d at 541 n 5).  Indeed, under the Criminal Procedure Law the trial court not only may, but must, do so (see CPL 310.50 [2] ["If the jury renders a verdict which in form is not in accordance with the court's instructions or which is otherwise legally defective, the court must explain the defect or error and must direct the jury to reconsider such verdict"]).

Accordingly, the order of the Appellate Division should be modified by granting the People, if they be so advised, leave to resubmit the charge of manslaughter in the first degree as a hate crime to another grand jury, and, as so modified, affirmed.

People of the State of New York v Dwight R. DeLee

No. 189

ABDUS-SALAAM, J. (concurring):

I join the opinion of the Court in its entirety, as the Court properly disposes of this case. However, given that jurors may be misled by confusing instructions on the order of deliberations in future cases involving hate crime and regular charges arising from the same incident, as the jurors evidently

- 1 -

were here, I write separately to suggest possible ways in which a trial court may properly instruct a jury so as to avoid repugnant verdicts in such cases.

Regardless of the specific relationship between a hate crime charge and an equivalent non-hate crime charge arising from the defendant's commission of the same offense, the court should, at a minimum, unequivocally inform the jury that it cannot convict the defendant of the hate crime and at the same time acquit the defendant of the corresponding non-hate crime. Rather, the court should explain, if the jury considers both charges, it must either acquit on both, or it may convict on the hate crime,[1] or it may convict only on the lesser included non-hate crime.

Beyond that, amici in these cases propose different instructions on the manner in which a jury must deliberate on a hate crime charge and a related non-hate crime charge. For example, the District Attorneys Association of the State of New York asserts that the court should tell the jury that the non-hate crime is a lesser included offense of its hate-crime variant, such that if the jury convicts the defendant of the hate crime, it cannot deliberate on the non-hate crime allegedly committed by the same criminal conduct. Defendant suggests that the court should inform the jury that they must deliberate on

---

[1] Of course, again, the jury must be told that if it convicts on the hate crime, it must either convict on the non-hate crime or it must not reach a verdict on the non-hate crime.

both the hate crime charge and the non-hate crime charge, and any lesser included offenses under each charge, and arrive at a consistent verdict on all charges.  By contrast Lambda Legal Defense and Education Fund and its associated amici suggest that the relationship between the crimes be explained via an interrogatory on the verdict sheet rather than an oral instruction.  Under that approach, the court would provide the court with a verdict sheet asking the jury to indicate its verdict on the non-hate crime charge and to separately declare whether it also found the existence of the bias motive which is essential to sustain a conviction on the hate crime charge.

With the exception of Lambda Legal's proposed special verdict sheet, which like any special verdict sheet is disfavored under the law (see People v Ribowsky, 77 NY2d 284, 290 [1991]), these proposed jury instructions all provide plausible guidance on the consideration of hate crime charges and related non-hate crime charges.  I believe, though, that courts would provide particularly clear and legally correct guidance on this subject by telling the jury to treat a non-hate crime as a lesser included offense of an equivalent hate crime allegedly committed via the same criminal acts.

Under our precedent's criteria for lesser included offenses, a non-hate crime appears to be a lesser included offense of an equivalent hate crime.  In that regard, we have held that one offense is a lesser included offense in relation to

another offense if: (1) the alleged greater offense is unequivocally of a different degree, and carries a considerably different sentence, than the lesser offense; and (2) it is theoretically impossible to commit the greater offense without also committing the lesser offense by the same conduct (see CPL 1.20 [37]; People v Miller, 6 NY3d 295, 300-302 [2006]; People v Glover, 57 NY2d 61, 63-64 [1982]).  And, in Miller, supra, we made clear that an offense which is classified under the same letter grade as a related offense may still be greater than the related offense if the two offenses "are unequivocally of different degrees and carry considerably different sentences" (id. at 300).

Because a hate crime and the equivalent non-hate or ordinary crime share all the same elements, with the exception of the bias motive that elevates a regular crime to a hate crime (see Penal Law § 485.05), it is impossible to commit the hate crime without also committing the ordinary crime.  Furthermore, although a hate crime shares the same felony grade classification as an equivalent ordinary crime, the ordinary crime may be a lesser included offense of the hate crime if the hate crime is unequivocally of a different degree than, and carries a considerably different sentence than, the ordinary crime.  And, a hate crime is, as a practical matter, of a greater degree than, and carries a greater sentence than, the equivalent ordinary crime.  In passing the Hate Crimes Act of 2000, the Legislature

plainly made hate crimes greater offenses than their equivalent
ordinary crimes.  The Legislature expressly found that hate
crimes are uniquely harmful in comparison to similar ordinary
crimes because they "do more than threaten the safety and welfare
of all citizens" by "intimidat[ing] and disrupt[ing] entire
communities and vitiat[ing] the civility that is essential to
healthy democratic processes" (Penal Law § 485.00).  The
Legislature's treatment of hate crimes as greater offenses is
further codified in Penal Law § 485.10, which provides that when
a defendant is convicted of a hate crime and "the specified
[equivalent ordinary] offense is a misdemeanor or a class C, D or
E felony," the hate crime "shall be deemed to be one category
higher than the specified offense" (Penal Law § 485.10 [2]), and
that hate crimes with higher grade classifications must be
punished within a defined set of severe sentencing ranges (see
Penal Law §§ 485.10 [3]; 485.10 [4]).  Thus, not only has the
Legislature concluded that hate crimes are of an unequivocally
greater degree than their ordinary variants, but it has also
decided to impose considerably higher sentences for hate crimes.

        Accordingly, an ordinary crime is a lesser included
offense of the equivalent hate crime, and in a case involving an
ordinary criminal charge and the equivalent hate crime charge
arising from the same criminal conduct, the jury should be told
that the ordinary crime is a lesser included offense of the hate
crime.  To that end, the court should instruct the jury that if

it convicts the defendant of the greater offense, it "will not consider" the lesser included offense (New York CJI2d, Lesser Included Offenses).  In that situation, the jury should be told to deliberate on any unrelated charges based on different criminal conduct.  Of course, if the jury instead acquits the defendant of the hate crime, it should next deliberate on the equivalent ordinary offense, and in the event of an acquittal on that ordinary charge, it may consider any lesser hate crime or lesser included ordinary crime which has been charged based on the same conduct.

By preventing the jury from deliberating on an ordinary charge after it has convicted the defendant of the equivalent hate crime, a lesser included offense instruction would preclude the jury from reaching an inconsistent verdict, or any verdict for that matter, on the ordinary crime.  And, in the event that the jury ignores the instructions and convicts the defendant of both the hate crime and the corresponding ordinary crime, the court may eliminate excessive punishment by dismissing the non-hate crime count as an inclusory concurrent offense (see CPL 300.40 [3] [b]; Miller, 6 NY3d at 303-304).  The treatment of an ordinary crime as a lesser included offense of the equivalent hate crime may also give appellate courts desirable flexibility in crafting appropriate remedies for any deficiency in the trial evidence establishing defendant's guilt of the hate crime. Specifically, where a defendant is convicted of a hate crime

based on ample evidence of his conviction of the equivalent
ordinary crime but on insufficient evidence of the bias motive,
the court need not dismiss the entire conviction in the face of
the compelling evidence of the defendant's guilt of the ordinary
crime but may instead reduce the hate crime conviction to a
conviction for the ordinary offense (see CPL 470.15 [2] [a]).

In sum, trial courts should instruct jurors in a clear
manner to avoid repugnant verdicts in mixed hate-and-ordinary-
crime prosecutions, and to achieve that goal, I believe courts
should consider informing jurors that an ordinary crime is a
lesser included offense of the corresponding hate crime.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order modified by granting the People, if they be so advised,
leave to resubmit a charge of manslaughter in the first degree as
a hate crime to another grand jury and, as so modified, affirmed.
Opinion by Judge Read.  Chief Judge Lippman and Judges Graffeo,
Smith, Pigott, Rivera and Abdus-Salaam concur, Judge Abdus-Salaam
in a concurring opinion.


Decided November 24, 2014