OPINION OF THE COURT
Simons, J.
This is a gambling prosecution involving three bookmakers. They operated primarily in Manhattan but they frequently *445 "hedged” or "laid off” bets in Nassau County through an accomplice named Rothman. Following a joint trial, each was convicted of four counts of promoting gambling in the first degree and one count of conspiracy in the fifth degree. On appeal, a divided Appellate Division dismissed the conspiracy count and otherwise affirmed.[1]
The principal issues before us are (1) whether Nassau County had geographical jurisdiction to prosecute defendants when the only conduct there consisted of telephone calls from Manhattan hedging bets made in Manhattan and (2) whether the convictions for promoting gambling must be reversed because of the trial court’s instructions on jurisdiction. We conclude there should be an affirmance.
I
Defendants John Giordano, Joseph Giordano and Philip Cestaro, along with Bernard Rothman, conducted a bookmaking operation in Manhattan. The Giordano brothers managed the business and Rothman worked for them. Cestaro was a runner. On several occasions in the spring of 1989, Rothman placed telephone calls from Manhattan to the "Meacham” bookmaking operation in Nassau County to "hedge” or "lay off” bets placed in Manhattan. He did this when bets received by the Manhattan operation were not evenly placed against the two teams in a particular sporting event and it became necessary for defendants to shift their risk of loss by placing bets on the favored team with another bookmaking operation. In that way, if the Manhattan bettors won, defendants would also win on the hedge bets they had placed in Nassau County or elsewhere and they would thus have a source of funds to pay the Manhattan winners.
Following trial the jury found that defendants promoted gambling in the first degree and conspired to promote gambling *446 in the fifth degree and the court sentenced them to fines and terms of incarceration.
II
The State Constitution and the common law provide defendants with the right to be tried in the county where the crime was committed unless the Legislature has provided otherwise (People v Ribowsky, 77 NY2d 284, 291; People v Moore, 46 NY2d 1, 6; NY Const, art I, § 2). The burden rests on the People to establish geographical jurisdiction by a preponderance of the evidence (People v Ribowsky, 77 NY2d, at 291-292, supra). To establish jurisdiction on the promoting gambling counts here, the People invoked the statutory provision which establishes a county as the proper venue when the defendant, either directly or by an accomplice, engages in conduct "within such county sufficient to establish * * * [a]n element of such offense” (CPL 20.40 [1] [a]; People v Tullo, 34 NY2d 712, 714; see also, People v Guidice, 83 NY2d 630, 635-636).
Defendants contend, however, that promoting gambling in the first degree has only one element, knowingly advancing or profiting from unlawful gambling activity by engaging in bookmaking, and that Nassau County lacked geographical jurisdiction to prosecute them because there was no proof that they accepted bets, i.e., engaged in bookmaking, in Nassau County (see, Penal Law § 225.00 [9]). We conclude that advancing or profiting from unlawful gambling activity is a separate element of promoting gambling in the first degree and, if established by the evidence, could support jurisdiction in Nassau County.
Article 225 of the Penal Law sets forth a framework establishing two promoting gambling offenses and various other gambling-related offenses. Under the statutory scheme a mere "player” or bettor is not criminally liable but one who, in some capacity other than as a player, participates in any gambling enterprise or activity is guilty of a crime. The basic inquiry in each case is whether the game or scheme in issue constitutes gambling and whether defendant’s conduct is other than as a player.
The core crime, section 225.05, provides that a person is guilty of promoting gambling in the second degree when "he knowingly advances or profits from unlawful gambling activity.” A person "advances gambling activity” when, acting as other than a player, he engages in conduct which materially *447 aids any form of gambling activity (Penal Law § 225.00 [4]). The statute identifies various types of conduct which may constitute gambling activity, including conduct "toward the arrangement of any of its financial or recording phases”, and concludes with the catchall phrase referring to conduct directed "toward any other phase of [a gambling] operation.” Section 225.05 imposes misdemeanor liability for the entire spectrum of gambling activity, and is augmented by section 225.10 which criminalizes specialized kinds of felonious bookmaking and policy activity not included within it (see, Staff Notes of New York State Commission on Revision of Penal Law and Criminal Code, McKinney’s Spec Pamph [1964]). The article also sets forth various possessory offenses (see, e.g., Penal Law §§ 225.15, 225.30).
Section 225.10 is structured to incorporate the exact language of section 225.05 as its initial element of advancing gambling activity, and then adds two subdivisions identifying additional elements which enhance the crime to first degree. Manifestly, second degree promoting, as defined in section 225.05, is a lesser included crime of first degree gambling, as set forth in section 225.10, and, on the record before us, defendants could have been prosecuted for it in Nassau County. Indeed, defendants requested that the court instruct the jury that it was a lesser included offense.
The language of section 225.10 requiring interpretation here provides:
"A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:
"1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars; or
The opening paragraph and subdivision (1) describe different conduct; the use of the word "by” in the statute to define how the enhanced liability obtains does not, as defendant maintains, collapse two elements into one. One "advances gambling” activity by engaging in any conduct which materially aids a gambling operation (Penal Law §§ 225.05, 225.00 [4]), in this case by hedging bets. Thus, Rothman’s conduct constituted promoting gambling in the second degree, necessarily establishing his commission of the first element of the first degree crime. *448 His liability was raised to the felony level because he engaged in bookmaking as a business.
To read Penal Law § 225.10 (1) as a one element crime, "advancing unlawful gambling by bookmaking”, would make the statute redundant and render the language in the opening paragraph surplusage. That paragraph holds defendant guilty of promoting gambling when he "advances gambling activity”, but "bookmaking” is defined as "advancing gambling activity by unlawfully accepting bets” as a business (see, Penal Law § 225.00 [9]). Accordingly, the statute would have no different meaning if the opening language were excised from it as defendants would do. Under well-established principles of interpretation, effect and meaning should be given to the entire statute and " 'every part and word thereof ” (Sanders v Win-ship, 57 NY2d 391, 396). We should assume the Legislature had a purpose when it used the phrase "advances or profits from unlawful gambling activity” in the first paragraph and avoid a construction which makes the words superfluous (see, Matter of Branford House v Michetti, 81 NY2d 681, 688). These rules of statutory construction lead us to conclude that the opening language of the statute and that of subdivision (1) address two distinct types of conduct, and must therefore be two elements of the crime. Indeed, the statute, far from encompassing only one element, promoting gambling by bookmaking, as defendant maintains, includes four: not only the elements of bookmaking and advancing unlawful gambling, but also receiving five or more bets totalling more than $5,000 on a given day and knowingly profiting from the bookmaking operation when the bets are received (see, 3 CJI[NY] PL 225.10 [1], at 1862-1865).
Thus, we conclude that conduct advancing gambling activity and engaging in a bookmaking business are two separate elements. If conduct establishing one of these two elements occurred in Nassau County, that County had jurisdiction to prosecute defendants for the whole crime.
Inasmuch as neither defendants nor their associates accepted or received bets in Nassau County, the People necessarily relied on evidence of the other element, that defendants promoted gambling in Nassau County by laying off bets there. The evidence of the People’s case rested almost entirely on the testimony of two undercover officers and tapes of intercepted telephone calls to the Meacham operation. It established that defendants’ accomplice, Rothman, placed phone calls from Manhattan to the Nassau County bookmaking operation to lay *449 off bets on the days specified in the indictment. By hedging bets with another bookmaker, Rothman advanced gambling activity within the meaning of the statute because he (1) acted as other than a "player” (defined in Penal Law § 225.00 [3]); (2) he materially aided a bookmaking operation by reducing its risk of heavy losses; and (3) his conduct was directed toward a critical phase of the gambling businessits profitability on a particular game as well as its over-all financial viability.[2]
Moreover, he did so in Nassau County because the Criminal Procedure Law provides that oral statements made over the telephone are deemed to be statements made in both the sending and receiving counties (see, CPL 20.60 [1]; see also, People v Botta, 100 AD2d 311, 315, lv denied 62 NY2d 805). Thus, even though Rothman operated in Manhattan and placed telephone calls to Nassau County from there, Nassau County was a proper venue for prosecution of the crimes. Inasmuch as defendants were accomplices of Rothman, they too could be prosecuted in Nassau County.
Ill
Defendants contend further that inasmuch as the Appellate Division reversed defendants’ conspiracy convictions for insufficient evidence, no predicate remains for jurisdiction in Nassau County because the trial court in its supplemental charge, in effect, directed a verdict on jurisdiction based on the conspiracy count of the indictment.
Preliminarily we note that the record contains abundant evidence from the undercover officers and the tapes to establish beyond a reasonable doubt that Rothman made the hedge bets to the Meacham operation in Nassau County. Indeed, defendants do not dispute this evidence. Their primary contention is that even though these acts were established beyond a reasonable doubt, (1) the trial court’s expanded charge on jurisdiction requires the court to presume that the jury found jurisdiction for all counts based on the conspiracy, and thus (2) because the Appellate Division reversed the conspiracy convictions, the promoting gambling convictions must also be reversed.
In its initial charge, the trial court correctly instructed the jury that it must find that Nassau County had jurisdiction to *450 prosecute each count of the indictment by a preponderance of the evidence. Consistent with the provisions of subdivisions (1) (a) and (1) (b) of CPL 20.40, it charged the jury that it could find jurisdiction if it found conduct occurred within Nassau County sufficient to establish an element of the crime or a conspiracy to commit the crime. It then charged the jury separately on the promoting counts and on count 20, the conspiracy count, instructing the jury that as to conspiracy the jury must find an overt act committed in Nassau County to support the charge that defendants conspired to promote gambling in Nassau County. Defendants did not object to any part of this charge when given, or when it was subsequently reread in response to requests by the jury during deliberations.
On the second day of deliberations, the jury again requested a reread of the charge on jurisdiction. After consultation with counsel, the court stated that it intended to repeat its initial charge and to expand its instructions, over defense objections that doing so would direct a verdict against defendants. When it instructed the jury, the court pointed out once again that there were two ways the People could establish jurisdiction — by establishing that an element of the crime of promoting gambling occurred in the county — or by establishing a conspiracy to commit the object crime of promoting gambling in the county. The court then went on to state "I would suggest, I am certainly not directing, I would suggest that you might want to consider first in your deliberations the 20th count of the indictment, the conspiracy count.” It advised the jury that if it found beyond a reasonable doubt each and every element of conspiracy and that an overt act in furtherance of the conspiracy was committed in Nassau County, then Nassau’s jurisdiction to prosecute both the conspiracy charge and the promoting gambling charges would be established. The court further instructed the jury that if the People had not proven the conspiracy count to its satisfaction, the jury must still consider, for each of the counts charging promoting gambling, whether the People had proven "that the defendants or any one of them or their aiders and abetters committed an element of that crime of promoting gambling within Nassau County.” Following these instructions, the jury deliberated further until it requested a reread of the instruction on aiding and abetting. *451 Shortly after receiving those additional instructions, the jury returned the guilty verdicts.[3]
The supplemental charge was correct, indeed no objection to the substance of it was made. Moreover, the instruction left all factual determinations to the jury and provided it with an analytical framework within which to determine the jurisdictional questions under CPL 20.40 (1) {see also, Penal Law § 105.25 [1]). In short, the court instructed the jury that if it found certain factual matters proven, those facts would establish jurisdiction. It did not tell them that it had to find an agreement or an overt act and it did not "direct” a verdict on the conspiracy count, the promoting counts or on the question of jurisdiction.
The jury rendered a general verdict and there is no way to determine if its finding of jurisdiction for the promoting gambling counts was based on the conspiracy or on an element of promoting gambling. Under such circumstances, the court is not compelled to assume that the jury found jurisdiction based upon unproven conduct. Where, as here, a general verdict has been rendered and there are two lawful grounds upon which the jury could have reached that verdict but one of those grounds lacks support in the evidence, we may presume that the jury reached its determination upon the factually sufficient grounds (see, Griffin v United States, 502 US 46). Even if the court erred in its charge, and we conclude it did not, the fact that neither theory of geographical jurisdiction was illegal permits harmless error review (see, People v Martinez, 83 NY2d 26, 35, cert denied — US —, 114 S Ct 2153; and compare, People v Ribowsky, 77 NY2d 284, 292, supra).
In this case the People established that defendants, by their accomplice Rothman, hedged bets by telephone calls to the Meacham operation in Nassau County. This established geographical jurisdiction for the promoting gambling counts and the jury was properly charged on the point. Rothman’s calls may have been the only conduct occurring in Nassau *452 County, as defendants maintain, but they constituted both overt acts, whether pleaded as such or not, and the first element of promoting gambling and established a jurisdictional predicate for both the crimes of promoting gambling and conspiracy to promote gambling.[4] This is so because separate and apart from the jurisdictional issue, the jury found beyond a reasonable doubt that defendants were guilty of promoting gambling in the first degree on the dates that Rothman placed calls to Nassau County. That verdict "necessarily implies” a finding of proper venue by a preponderance of the evidence (see, People v Ribowsky, 77 NY2d, at 292, supra) and under the well-settled common-law rule applied in Griffin v United States (supra), we need not now reverse the convictions for promoting gambling based upon the speculation that the jury found jurisdiction based on a conspiracy not established by the evidence.
IV
Defendants’ remaining arguments are without merit. The Trial Judge complied with our decision in People v O’Rama (78 NY2d 270), insofar as he sought input from counsel with respect to requests from the deliberating jury and thereafter advised the parties of the substance of the court’s intended response. Defendants’ contention that they received harsher sentences than their plea-bargaining codefendants as punishment for exercising their right to a jury trial is unpreserved for this Court’s review (see, People v Hurley, 75 NY2d 887). Accordingly, the order of the Appellate Division should be affirmed.

. The indictment actually involved five bookmaking operations in the New York metropolitan area and it charged 13 other individuals with numerous counts of promoting gambling in the first degree. In addition, count 20 of the indictment charged all 16, including defendants, with conspiracy in the fifth degree. The count alleged that all of the individuals charged were engaged in a common scheme and plan to promote gambling in the first degree.
All these parties pleaded guilty before trial except defendants and codefendants Patsy Capolongo and Edward Pagnotta, Sr., who was a member of the Meacham bookmaking operation. Defendant Capolongo entered a guilty plea during jury selection, and defendant Pagnotta died during the trial. Thus, appellants were the only individuals prosecuted to a jury verdict.

. The business nature of the activity was demonstrated by evidence that Rothman was on a "half sheet” and ran up a "red figure”, terms meaning that Rothman either maintained credits or debits with the Meacham operation depending on the results of his hedge bets over a period of time.

. Defendants and the dissenters contend that the rendition of the jury verdict shortly after the supplemental charge compels the inference that jurisdiction for the promoting gambling counts was founded on the supplemental conspiracy instruction. As noted, however, after that instruction but before rendering the verdicts, the jury requested and heard a rereading of the charge on aiding and abetting — a matter relevant to the promoting gambling counts but not the conspiracy count. Thus, it is equally inferable, if not more so, that the jury found jurisdiction for the promoting gambling charges by finding that conduct establishing an element of that crime was committed in Nassau County.

. Notably, the Appellate Division reversal was expressly based on the insufficient evidence of an agreement, not any failure to prove overt acts in Nassau County.