People v Vail (2019 NY Slip Op 05848)





People v Vail


2019 NY Slip Op 05848


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


119 KA 17-00508

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT
v
CARLOS A. VAIL, ALSO KNOWN AS VAIL-MATEO, ALSO KNOWN AS CARLOS ALVARO, DEFENDANT-APPELLANT. 






DAVISON LAW OFFICE PLLC, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR DEFENDANT-APPELLANT.
JAMES B. RITTS, DISTRICT ATTORNEY, CANANDAIGUA (V. CHRISTOPHER EAGGLESTON OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Ontario County (Elma A. Bellini, J.), rendered January 13, 2017. The judgment convicted defendant, upon a jury verdict, of kidnapping in the first degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of kidnapping in the first degree (Penal Law
§ 135.25 [2] [a]). Defendant met an underage girl (victim) while living in Florida. Defendant helped the victim's family move to New York, began pursuing a romantic relationship with her, and remained in New York. The record reflects that, at some point thereafter, defendant decided to return to Florida. Defendant, who at that time was over the age of 21, agreed to a request by the then 14-year-old victim to take her with him to Florida. The victim crawled out of a window of her mother's home and entered defendant's car. While driving to Florida, defendant engaged in intercourse with her twice. The vehicle was ultimately stopped by police in Georgia, at which point defendant admitted to having a sexual relationship with the victim.
Defendant's contention that Supreme Court erroneously instructed the jury on the issue of geographical jurisdiction pursuant to CPL 20.40 is unpreserved because he failed to object to that charge (see People v Hall, 294 AD2d 112, 112-113 [1st Dept 2002], lv denied 98 NY2d 710 [2002]; see generally People v Roulhac, 166 AD3d 1066, 1068 [3d Dept 2018], lv denied 32 NY3d 1128 [2018]; People v Hinds, 77 AD3d 429, 430-431 [1st Dept 2010], lv denied 15 NY3d 953 [2010]). Defendant likewise failed to preserve his contention that the jury charge on geographical jurisdiction, together with the trial testimony, rendered the indictment duplicitous or otherwise created the possibility that defendant was convicted of an unindicted offense (see People v Allen, 24 NY3d 441, 449-450 [2014]; People v Smith, 145 AD3d 1628, 1629 [4th Dept 2016], lv denied 31 NY3d 1017 [2018]).
We reject defendant's further contention that defense counsel was ineffective for failing to object to the jury charge regarding venue. Evidence presented at trial established that defendant met with the victim after she left her mother's Ontario County residence, thus establishing venue in Ontario County by virtue of an element of the offense occurring in that county (see CPL 20.40 [1] [a]). Defendant's contention on appeal that the victim walked in a specific direction and crossed into a neighboring county before being met by defendant was unsupported at trial. Thus, any challenge to the jury charge would have had " little or no chance of success' " (People v Caban, 5 NY3d 143, 152 [2005]). Defendant also contends that defense counsel was ineffective for failing to correct misstatements made by the prosecutor and the court [*2]during plea negotiations regarding the minimum sentence that he could receive after trial. That contention is based on matters outside the record on appeal and therefore must be raised in a proceeding pursuant to CPL article 440 (see People v Surowka, 103 AD3d 985, 986-987 [3d Dept 2013]; see also People v Burgos, 130 AD3d 1493, 1494 [4th Dept 2015]).
Defendant's challenge to the legal sufficiency of the evidence of abduction is unpreserved for our review because "his motion for a trial order of dismissal was not specifically directed at that alleged shortcoming in the evidence" (People v Lasher, 163 AD3d 1424, 1425 [4th Dept 2018], lv denied 32 NY3d 1005 [2018] [internal quotation marks omitted]). Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence with respect to the elements of abduction and intent pursuant to Penal Law § 135.25 (2) (a), and with respect to venue (see generally People v Pritchard, 149 AD3d 1479, 1479 [4th Dept 2017]).
The dissent disputes the weight of the evidence regarding the element of abduction, which as relevant here "means to restrain a person with intent to prevent his liberation by . . . secreting or holding him in a place where he is not likely to be found" (Penal Law § 135.00 [2] [a]). Although the victim requested that defendant take her with him when he returned to Florida, one may "restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with [her] liberty," i.e., "restrain" her, even with the "acquiescence of the victim, if [she] is a child less than sixteen years old" absent the acquiescence of the parent or guardian in the movement or confinement (§ 135.00 [1] [b]). Here, defendant had requested and been denied permission by the victim's mother to date the victim, and the evidence at trial supported a finding that defendant lacked consent from her mother to take the victim when he returned to Florida. Further, after the victim's family discovered that she was missing from their home, both her mother and sister attempted to contact defendant. While driving with the victim to Florida, defendant told both the mother and sister that the victim was not with him and that he was already in Florida, neither of which was true and both of which hindered any attempt to locate the victim by those attempting to find her. Defendant thus secreted the victim by explicitly misrepresenting both of their whereabouts, denying that he had taken her with him, and keeping the victim where she was not likely to be found, i.e., in a moving vehicle driving across multiple state lines. Contrary to the dissent's suggestion, applying the definition of abduction to those facts does not render otherwise innocuous or innocent conduct criminal. Indeed, the definition of "restraint," an element of abduction, requires that the defendant act "with knowledge that the restriction is unlawful"
(§ 135.00 [1]). The facts here—including that defendant had requested and been denied permission to date the victim, that defendant picked the victim up at night after she crawled from a window in her mother's home, that defendant misrepresented his and her location as they drove, and that he engaged in intercourse with the minor victim twice on the trip—each support a finding that defendant acted with knowledge that his conduct in driving her from her home was unlawful. Those facts distinguish this case from innocent, day-to-day activities that the dissent worries our decision here might criminalize. Simply put, the weight of the evidence supports a determination that defendant did not innocently acquiesce to the mere request of a 14-year-old acquaintance to drive her to Florida, but rather took advantage of a 14-year-old child's age and inexperience, by driving the victim across multiple state lines, away from her family, in order to engage in an unlawful sexual relationship with a child.
We agree with defendant, however, that the court erred in instructing the jury on the element of intent pursuant to Penal Law
§ 135.25 (2) (a), and we therefore reverse the judgment and grant a new trial. Section 135.25 (2) (a) provides in relevant part that "[a] person is guilty of kidnapping in the first degree when he abducts another person and when . . . [h]e restrains the person abducted for a period of more than twelve hours with intent to . . . [i]nflict physical injury upon him or violate or abuse him sexually." On appeal, defendant specifically contends that the court erroneously instructed the jury regarding "intent to . . . violate or abuse . . . sexually" (id.). We interpret the statute to mean that kidnapping in the first degree requires that a defendant both restrain a victim for more than 12 hours and possess, for more than 12 hours during the period of restraint, the intent to violate or abuse the victim sexually. Here, however, the court instructed the jury that "intent does not require advanced planning, nor is it necessary that the intent be in the person's mind for any particular period of time." After deliberations began, the jury returned multiple notes requesting further guidance on the relevant intent element. One note stated, "Please define intent, and if [*3]there is any time-frame given to defining intent." The court responded by rereading the above instruction. Viewing the charge as a whole and in light of the evidence produced at trial (see People v Walker, 26 NY3d 170, 174-175 [2015]), we conclude that the instruction was erroneous inasmuch as it permitted the jury to find that the element of intent pursuant to section 135.25 (2) (a) had been established even if the jury did not find that the intent existed for more than 12 hours during a period of over 12 hours of restraint. Consequently, "the instruction did not adequately convey the meaning of intent to the jury and instead created a great likelihood of confusion such that the degree of precision required for a jury charge was not met" (People v Medina, 18 NY3d 98, 104 [2011]). The error in the intent instruction is particularly significant because, "by their specific questions, the jurors indicated that they had focused upon the time defendant's criminal intent was formed" (People v Gaines, 74 NY2d 358, 363 [1989]).
In light of the above conclusion, we need not address defendant's remaining contentions regarding the severity of his sentence and the imposition of an improper fee.
Centra, J.P., Carni, and Troutman, JJ., concur; Lindley, J., concurs in the result in the following memorandum: The majority and dissent agree, as do I, that Supreme Court provided an erroneous instruction on the element of intent pursuant to Penal Law § 135.25 (2) (a) for kidnapping in the first degree. The issue separating my colleagues is whether the People established beyond a reasonable doubt that defendant secreted or held the victim with the intent to prevent her liberation, as required for the abduction element of kidnapping (see
§ 135.00 [2] [a]). I agree with the majority on that point. In my view, however, the People failed to establish that defendant restricted the victim's "movements intentionally and unlawfully in such a manner as to interfere substantially with [her] liberty"
(§ 135.00 [1]). Without such a restriction, there can be no restraint, which is another element of kidnapping (see § 135.25 [2]).
As the dissent points out, defendant merely took the victim where she wanted to go and when she wanted to go. She knew that defendant was returning to Florida, where he resided, and she asked to go with him. He agreed, and she then snuck out of her house to meet up with him. Defendant did not force or coerce the victim to do anything, and there is no evidence that he restricted her movements in any way at any time.
The People asserted at trial that, because the victim was 14 years old and defendant did not obtain permission from her mother to take her to Florida, the victim was restrained as a matter of law. But the fact that the victim was 14 years old is relevant only to her inability to consent; it does not obviate the need for the People to establish that defendant restricted the victim's movements in such a manner as to substantially interfere with her liberty. Indeed, the court properly charged the jury that restriction of movements and lack of consent are separate elements that both must be proven.
In any event, although a person is moved or confined "without consent" by, among other things, the "acquiescence of the victim, if he [or she] is a child less than sixteen years old" and the child's parent or guardian "has not acquiesced in the movement or confinement" (Penal Law § 135.00 [1] [b]), the victim here did not acquiesce to anything proposed by defendant. Rather, it was defendant who acquiesced to the victim's request that he drive her to Florida. Thus, even if defendant had restricted the victim's movements, it is by no means clear that he did so without the victim's consent.
Absent evidence that defendant restrained the victim by restricting her movements in a manner that substantially interfered with her liberty, the People failed to prove the crime of kidnapping in the first or second degree (Penal Law §§ 135.25, 135.20; see Penal Law § 135.00 [1], [2]). On appeal, however, defendant does not challenge the restraint element of kidnapping. In fact, defendant concedes the issue. Thus, inasmuch as we do not generally address the merits of an issue not raised by the appellant, I am constrained to agree with the majority that the proper remedy here is a new trial rather than dismissal of the indictment. If defendant had not conceded the element of restraint, I would agree with the dissent that the People also failed to prove that defendant abducted the victim.
Nemoyer, J., dissents and votes to reverse and dismiss the indictment in accordance with the following memorandum: Although I agree with my colleagues that the judgment should be [*4]reversed, I would not order a new trial. Instead, I would dismiss the indictment because, in my view, defendant's conviction of kidnapping in the first degree (Penal Law § 135.25 [2] [a]) is against the weight of the evidence. By holding otherwise, the majority has expanded the reach of the kidnapping statute well beyond any other reported case in New York. I must therefore dissent.
"Most people no doubt think they know what kidnapping' means, but the term is a hard one to define" (People v Leonard, 19 NY3d 323, 326 [2012]). "A person is guilty of kidnapping" when, inter alia, he or she "abducts another person" (Penal Law §§ 135.25, 135.20). Insofar as relevant here, the term "abduct" means "to restrain a person with intent to prevent his liberation by . . . secreting or holding him in a place where he is not likely to be found" (§ 135.00 [2] [a]). As thus laid out in the statute, abduction requires proof beyond a reasonable doubt of four elements: (1) restraint, which itself has about seven distinct sub-elements (see § 135.00 [1]); (2) intent to prevent liberation; (3) secreting or holding; and (4) in a place not likely to be found.
Those four elements are separate and distinct, and they must be afforded independent effect within the statutory scheme (see generally People v Giordano, 87 NY2d 441, 448 [1995]). Indeed, we must "assume the Legislature had a purpose" (id.) when it used phrases like "secreting or holding" and "intent to prevent liberation" in section 135.00 (2) (a), and we must "avoid a construction which makes th[ose] words superfluous" (Giordano, 87 NY2d at 448). The Court of Appeals applied the foregoing constructional canons in Leonard by analyzing each relevant element and sub-element of kidnapping separately, notwithstanding the Court's frank recognition of the complexity of the statutory scheme and the occasionally counterintuitive results its application engenders (19 NY3d at 326-329).
The kidnapping statute does not define either "secrete" or "hold," nor does it elaborate on what it meant by an intent to prevent "liberation." But in my view, no reasonable construction of "secrete," "hold," or "liberation" can result in a conviction on the uncontested facts of this case. It is undisputed that the purported kidnapping victim, then 14 years old, sought out defendant and asked him to drive her from New York to Florida, where she had originally met defendant and had previously resided. The trip was her idea, not his. She was voluntarily in his vehicle at all relevant times, and there is no allegation that she ever changed her mind or that defendant prevented her from leaving the vehicle. Nor is there any indication that, had the purported victim changed her mind, defendant would not have honored her wishes and immediately allowed her to leave the car.
Under these circumstances, it cannot be said that defendant either "secreted" or "held" the victim in his car, or that he intended to prevent her "liberation." She was there voluntarily and of her own accord, which is the very antithesis of being "secreted" or "held" somewhere. Taking a person to the destination of their choosing is also the very opposite of preventing that person's "liberation"; to the contrary, such transportation actually furthers the person's own agency. Put simply, no person needs to be "liberated" from their own travel plans. To say otherwise would mean that every driver is necessarily secreting or holding any passenger in their vehicle and that the driver is doing so with the intent to prevent the passenger's liberation—even when the passenger willingly entered the vehicle, is perfectly content to remain inside, and asked to be taken to a specific destination.
In short, unlike the majority, I am not prepared to rule that a person who voluntarily enters a vehicle and who expresses no desire to leave is being "secreted or held" by the driver, or that such a driver is intending to prevent the passenger's "liberation." Thus, because defendant did not either "secrete" or "hold" the purported victim inside his vehicle and did not intend to prevent her "liberation" from their voluntary excursion, he did not "abduct" her and cannot be guilty of kidnapping in either the first or second degree (see People v Belden, 215 AD2d 889, 889 [3d Dept 1995], lv denied 86 NY2d 840 [1995]).
Contrary to the majority's determination, the fact that defendant might have misled the mother of the purported victim about her daughter's whereabouts during the trip to Florida cannot, by itself, constitute the "secreting" to which the statute refers. To my mind, the notion of "secreting" necessarily assumes that the person being "secreted" would want to be located, and that is simply not the case here. In fact, any so-called misleading in this case occurred at the [*5]behest of the purported victim, who did not want her mother to know that she was returning to Florida. In my view, a person who misleads others about the location of another person is not "secreting" that person if the person allegedly being "secreted" is voluntarily fleeing or is otherwise going into hiding or seclusion. Put simply, if a person does not want to be found, then he or she cannot be "secreted" for purposes of the kidnapping statute. Any other construction would, in my view, drain the word "secrete" of any meaning.
Contrary to the majority's further determination, the fact that the purported victim was a minor at the time of the trip to Florida does not, by itself, mean that defendant necessarily abducted her. According to the plain text of the kidnapping statute, a victim's age is dispositive of only one of the approximately seven sub-elements of restraint, i.e., lack of consent, and restraint is itself only one of the four distinct elements of abduction (see Penal Law § 135.00 [1] [b]). Put differently, the sub-elements of restraint do not amount to proof of the other freestanding elements such as "hold or secrete" and "intent to prevent liberation" and, under the statutory scheme as adopted by the legislature, the victim's age has no dispositive significance to any other requirement of abduction apart from the lack of consent sub-element of the element of restraint. Thus, although the victim's age unquestionably satisfied the lack-of-consent sub-element of restraint, that sub-element comprises but a small portion of the total requirements for an "abduction" under New York law.
Notwithstanding the legislature's surgically-precise identification of the role to be played by the victim's age in the overall calculus of defining abduction—i.e., as irrefutable proof only of one sub-element of one element of abduction—the majority's analysis of the word "secrete" transforms the victim's minority status into a trump card that overwhelms the many elements and sub-elements of abduction to which the victim's age is not dispositive—i.e., every element and sub-element except the lack-of-consent sub-element of restraint. As a result, the majority's analysis would seemingly permit a conviction for kidnapping in the second degree—a class B felony (see Penal Law § 135.20)—whenever a nonparent drives a minor in a car (however briefly) without having first obtained parental consent. That is an unacceptable and unjust result, and the legislature prudently drafted the statute to incorporate additional elements—hold/secrete and intent to prevent liberation, chief among them—precisely to prevent such a miscarriage of justice. I do not think it is wise to, in effect, delete the very safeguards that protect a person from being convicted of a class B felony simply for driving their son's 14-year-old friend to post-hockey pizza without first consulting the friend's parent.
From a broader perspective, the drafters of the Penal Law viewed an abduction—the core aspect of any kidnapping—"as a very serious form of restraint, savoring strongly of the substantial removal, isolation and/or violence usually associated with genuine
kidnapping' " (William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 135.00 at 318, quoting Staff Comments of the Commn on Rev of Penal Law and Crim Code, 1965 Proposed Penal Law § 135.00 at 277 [emphasis added]). This case, however, has none of the hallmarks of a "genuine" kidnapping for which the legislature prescribed the extremely severe penalties attendant to class A and B felonies. Indeed, the typical affirmed kidnapping conviction looks nothing like this case. For example, in People v Robinson (168 AD3d 605, 606 [1st Dept 2019], lv denied 33 NY3d 953 [2019]), the defendant took a five-year-old girl to a hotel and refused to disclose her whereabouts in order to get revenge on the victim's mother; in People v Manning (151 AD3d 1936, 1937 [4th Dept 2017], lv denied 30 NY3d 951 [2017]), the defendants pretended to be FBI agents, handcuffed a woman on the street, hoisted her into their car, and drove away; in People v Barnette (150 AD3d 1136, 1137 [2d Dept 2017], lv denied 29 NY3d 1123 [2017]), the kidnapping was "marked by brutal and degrading treatment" and was carried out as part of a plan to rob the victim; and in People v Grohoske (148 AD3d 97, 102-103 [1st Dept 2017], lv denied 28 NY3d 1184 [2017]), the defendant "put [the victim's] hands behind his back, bound him with duct tape, took his cell phone and wallet . . . , forced him into a car, drove him from Manhattan to Philadelphia and abandoned him on an empty street shortly after midnight." The facts of this case, although unsavory, cannot be what the legislature had in mind when it classified kidnapping in the first degree as a class A-I felony punishable by life imprisonment—the same sentence prescribed for intentional murder (see Penal Law §§ 70.00 [2] [a]; 125.25 [1]; 135.25).
In closing, nothing said herein should be construed to suggest that I approve of [*6]defendant's conduct or that I think he is morally blameless. Quite the contrary, he repeatedly committed statutory rape in other states. But it is improper and unjust, in my view, to convict defendant of a crime he plainly did not commit (kidnapping) merely because, as the People acknowledge, New York lacks territorial jurisdiction to prosecute him for the statutory rape he committed elsewhere. At the end of the day, defendant should be held accountable for the crimes he committed in the fora in which he committed them, and that simply does not include a kidnapping in New York.
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court