People v Wilson (2024 NY Slip Op 04285)

People v Wilson

2024 NY Slip Op 04285

Decided on August 22, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 22, 2024

Before: Manzanet-Daniels, J.P., Moulton, Mendez, Rosado, O'Neill Levy, JJ. 

Ind. No. 1849/20 Appeal No. 2324 Case No. 2022-01034 

[*1]The People of the State of New York, Respondent,
v
Yuri Wilson, Defendant-Appellant.

Caprice R. Jenerson, Office of Appellate Defender, New York (Margaret E. Knight of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Sarah Lubin of counsel), for respondent.

Judgment, Supreme Court, New York County (Maxwell Wiley, J.), rendered March 4, 2022, convicting defendant, after a jury trial, of attempted assault in the first degree and assault in the second degree, and sentencing him, as a second violent felony offender, to an aggregate term of 12 years, unanimously reversed, on the law, and the matter remanded for a new trial.
Coworkers Quintero, Rahman, and Donado were walking along Broadway between West 32nd and West 33rd Street in Manhattan at approximately 8:00 p.m. on November 20, 2020. Rahman exchanged words with another person, Diallo, about a marijuana purchase that he had just made from Diallo. Surveillance video captured the conversation and the beginning of the physical altercation. As they argued, Diallo started punching Rahman, who fought back. Defendant, and another person, Traore, ran up from behind Rahman and began punching Rahman repeatedly around the head. Quintero, the victim, became involved in the melee when he tried to pull Rahman away.
Rahman, who was the only eyewitness to testify at trial, described the attack as the surveillance video was played to the jury. Rahman described witnessing defendant throw several "normal" punches and then make a motion with his arm toward Quintero in which defendant's "hand was like kind of like come straight from behind not like just punch." He described this motion as "like trying to pull something out, not like a punch, you know." Although Rahman testified that he never saw a weapon, he heard Quintero respire as if he was physically hurt and explained to the jury, "[t]hat's where [Quintero] got stabbed." The video, which is grainy, shows what the People described as a long, thin, dark-colored object in defendant's hand and what the defense described as a shadow.
Rahman also testified about what happened after the fight moved outside of the view of the surveillance camera. Defendant and Traore jumped on top of Quintero and continued to punch him. Diallo was no longer involved, but he was standing nearby. Rahman was struck in the head with a cell phone and may have lost consciousness for 40-50 seconds.
After the fight ended, Rahman found Traore's cracked cell phone. Surveillance video captured defendant and Traore leaving the scene together. Traore grabbed defendant's bag on the way out.
Rahman testified that after the fight ended, he and Quintero walked toward the subway. At that point, he saw blood on his shoes and realized that Quintero was bleeding. Quintero removed his jacket, revealing a "dime size" laceration that was bleeding heavily on the left side of his chest, and then he collapsed to the ground.
Although Quintero did not testify, his statements to an investigating officer were admitted at trial. Quintero did not know who stabbed him. He initially thought that he had been punched in the chest and did not realize that he was stabbed until after the fight ended.
Quintero required surgery for a puncture wound to his heart and was in [*2]the Intensive Care Unit at Bellevue Hospital for eight days.
Preliminarily, we note that the verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determinations. The jury could reasonably conclude from the video footage and Rahman's testimony that defendant stabbed Quintero with a sharp object during the altercation.
However, the evidence was legally insufficient to establish defendant's liability under an acting in concert theory, as the People presented no evidence that defendant was aware that Traore possessed or used a dangerous instrument and, thus, no evidence that defendant shared with Traore the required intent to cause serious physical injury or physical injury (see People v Campbell, 79 AD3d 624, 624 [1st Dept 2010], lv denied 17 NY3d 793 [2011]). Nevertheless, the court's erroneous charge does not require reversal because "[w]here, as here, a general verdict has been rendered and there are two lawful grounds upon which the jury could have reached that verdict but one of those grounds lacks support in the evidence, we may presume that the jury reached its determination upon the factually sufficient grounds" (People v Giordano, 87 NY2d 441, 451 [1995], citing Griffin v United States, 502 US 46 [1991]).
Reversal is required, however, because the court should have granted defendant's request to charge the jury with attempted assault in the third degree as a lesser included offense. Both requirements of the applicable test were met (see People v Glover, 57 NY2d 61, 64 [1982]). The court erroneously concluded that the second prong of the Glover test was not satisfied. Viewing the evidence in the light most favorable to defendant (see People v Martin, 59 NY2d 704, 705 [1983]), there is a reasonable view of the evidence that defendant merely attempted to cause physical injury to the victim without use of a dangerous instrument to cause that injury (see e.g. People v Battle, 22 NY2d 323, 324-325 [1968]; People v Brown, 117 AD3d 1536, 1537-1538 [4th Dept 2014]; People v Pezzella, 103 AD2d 851, 851-852 [2d Dept 1984]; cf. People v Nieves, 136 AD2d 250 [1st Dept 1988]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 22, 2024