685 1st Ave LLC v Qiyuan Cai (2025 NY Slip Op 50721(U))

[*1]

685 1st Ave LLC v Qiyuan Cai

2025 NY Slip Op 50721(U)

Decided on May 5, 2025

Civil Court Of The City Of New York, New York County

Meyers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 5, 2025
Civil Court of the City of New York, New York County

685 1st Ave LLC, Petitioner,

against
Qiyuan Cai, "JOHN DOE" and "JANE DOE", Respondents.

Index No. LT-318850-24/NY

Rose & Rose for Petitioner.

Adam R. Meyers, J.

Introduction
Petitioner commenced this holdover eviction proceeding after the expiration of an unregulated lease, without service of any notice under RPL § 226-c apprising Respondent of its intention not to renew the lease. Respondent failed to appear in court and an inquest was held. Petitioner argued at inquest that no pre-commencement notice was required insofar as Petitioner—who offered lease renewal to Respondent at a modest rent increase before commencing this proceeding—was not covered under § 226-c.
After reviewing the facts presented and the applicable law, the court disagrees. While Petitioner was not required to serve a § 226-c notice when it offered a renewal lease to Respondent at a rent increase of less than 5%, it was required to give notice when it changed its mind and determined not to renew Respondent's lease. Therefore, the proceeding must be dismissed.
Procedural Background and Inquest
This holdover eviction proceeding was commenced on October 25, 2024 (see Petition, NYSCEF Doc. No. 1), following the expiration of Respondent's lease for the premises—apparently an unregulated apartment exempt from coverage under 2024's Good Cause Eviction Law. Petitioner purports to have served the commencing papers upon Respondent on or around November 7, 2024, by conspicuous placement and mailing (see Affidavit of Service, NYSCEF Doc. No. 4).
Respondent failed to appear on the initial return date of November 19, 2024, and the proceeding was adjourned for inquest. A postcard reflecting the adjourned date was sent to [*2]Respondent by the court.
On the return date, Respondent again failed to appear and an inquest was held. At inquest, Petitioner called Jeannette Hiciano as its fact witness, and the court accepted into evidence the following exhibits:
• Ex 1 — Deed;
• Ex 2 — Condominium Declaration;
• Ex 3 — Temporary Certificate of Occupancy;
• Ex 4 — Multiple Dwelling Registration;
• Ex 5 — Original Lease (9/2023 — 9/2024);
• Ex 6 — Printout from On-Site reflecting the transmission of electronic lease renewal offers;
• Ex 7 — Lease Renewal Offer;
• Ex 8 — Rent Ledger.
Petitioner established, inter alia: that it was the landlord of the Premises; that it had a lease with Respondent for the period from September 15, 2023 through September 14, 2024; that Petitioner generates and distributes leases and lease renewal offers via a program called On-Site; that Respondent executed the initial lease electronically through On-Site after receiving login credentials by email; that Petitioner's management team prompted On-Site to send to Respondent lease renewal notices on June 30, August 2, August 21, August 23, and September 4, 2024; that Respondent never executed a renewal lease through On-Site; that Respondent's written lease provided for its term to end on September 14, 2024; and that thereafter the instant proceeding was commenced.
After the conclusion of Petitioner's proofs, the court inquired of Petitioner whether the electronic lease offers sent via On-Site satisfied Petitioner's obligations under Section 226-c of the Real Property Law. The court noted that the initial lease included language providing that
[a]ny notice, statement, demand or other communication required or permitted to be given[,] rendered or made by either party to the other, pursuant to this Lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this Lease) and shall be given by registered or certified mail, return receipt requested, or by overnight mail by a nationally recognized overnight carrier
(see Initial Lease, Exhibit 5, § 25). After a brief discussion, the proceeding was adjourned and the record held open for Petitioner to determine whether another document executed between the parties authorized electronic service. On the return date, Petitioner indicated that it had found no document authorizing electronic service of the § 226-c notice, but argued that under the circumstances presented no such notice was required.
Thereafter the court reserved decision on Petitioner's application for judgment after inquest.
Discussion
Before the court are two questions. First, whether RPL § 226-c required Petitioner to serve Respondent with statutory notice prior to the commencement of this proceeding. Second, whether Petitioner's electronic transmission of lease renewal offers satisfied the requirements of the statute. We begin with the first question.
Prior to 2019, and absent explicit requirements to the contrary in the lease itself, commencement of a holdover proceeding after the expiration of a written lease in an unregulated tenancy required no prerequisite notice (see, e.g., 620 Dahill, LLC v Berger, 51 Misc 3d 4, 5, [App Term, 2d Dept 2016], citing Adams v City of Cohoes, 127 NY 175, 182 [1891] [landlord may bring summary proceedings against tenant holding over after fixed term and is "not required before doing so to serve the tenant with any notice to quit"]). If a lease expired and no rent was paid and accepted thereafter, the tenancy was understood to have expired, and the petitioner could proceed directly to the commencement of a holdover proceeding (id.; see also, Arverne Limited Profit Housing Corp. v Taft's Dental, P.C., 63 Misc 3d 984, 989 [Civ Ct, Qns Cnty 2019]). Proceedings of this nature had long been distinguishable from holdover proceedings brought against month-to-month tenants, whom landlords were required to serve with notice of termination under RPL § 232-a prior to bringing suit.
This changed when RPL § 226-c was promulgated as part of the Housing Stability and Tenant Protection Act of 2019. This section requires, in relevant part, that a landlord give written notice to the tenant thirty, sixty or ninety days prior to the end of the lease term
[w]henever a landlord intends to offer to renew the tenancy of an occupant in a residential dwelling unit with a rent increase equal to or greater than five percent above the current rent, or the landlord does not intend to renew the tenancy
(RPL § 226-c [1][a] & [2]). Failure to provide timely notice has the effect of extending the tenancy through the length of the notice period (RPL § 226-c [1][a]).
Petitioner argues that the facts of this proceeding fall outside the applicability of RPL § 226-c. In Petitioner's view, § 226-c divides the field of all landlords at the end of written lease terms into three categories—two of which are explicitly stated and one of which is implied. There are 1) landlords who intend to offer renewal leases at a rent increase greater than or equal to 5%, 2) landlords who do not intend to offer renewal leases at all, and an implicit final category of 3) landlords who intend to offer renewal leases at a rent increase of less than 5%. While § 226-c explicitly requires written notice to be given by the first and second categories of landlords, Petitioner asserts that no notice is required to be given by those that fall into the third category. These categories are understood to be mutually exclusive and durable; thus, under this view, a landlord who initially offers a renewal lease at 2% may secure status in the third category and retain its exemption from notice requirements even as its intention—as reflected in its later decision to commence eviction proceedings—shifts against renewing its lease with a tenant. If this view were correct, Petitioner would seem to be exempt from the requirements of § 226-c insofar as it offered Respondent a lease at a rent increase of less than 5% in the months before commencing this proceeding.
The alternative view is that § 226-c(1)(a) does not establish comprehensive and mutually exclusive categories but rather describes two distinct circumstances in which notice will be required: when large rent increases are proposed, and when no renewal will be offered. Under this latter view, a landlord offering renewal at a 6% increase would be required to wait through [*3]the statutory notice period before an accepted and executed renewal lease could become effective, while a landlord renewing at 3% could contract for the increase to become effective as early as it pleased. Both landlords, however, if their intentions changed from renewal to non-renewal—perhaps after an offered lease renewal was declined or ignored by their tenant—would be required to give statutory notice before the commencement of a holdover proceeding.
The court's fundamental goal in interpreting a statute is to effectuate the intent of the legislature (State v Patricia II, 6 NY3d 160, 162 [2006]). To the extent that the language of the statutory text is unambiguous, a court must give effect to its plain meaning (Raynor v Landmark Chrysler, 18 NY3d 48, 56 [2011]).
Here, the statutory language is unambiguous. Section 226-c provides that "[w]henever a landlord [. . .] does not intend to renew the tenancy, the landlord shall provide written notice" (RPL § 226-c [1][a]; see also, 526 W. 174th St. Hous. Dev. Fund Corp. v De La Cruz-Santulli, 84 Misc 3d 1237[A] [Civ Ct, NY Cnty 2024] ["The plain read of this language demonstrates that every single time a landlord does not intend to renew a tenancy, the landlord must provide the kind of notice required in RPL § 226-c"]). While Petitioner originally offered to renew Respondent's lease, the commencement of this proceeding seeking Respondent's eviction is proof that it now "does not intend" to proceed with renewal of the tenancy, bringing Petitioner within the ambit of RPL § 226-c. Thus, the service of written notice apprising Respondent of this fact was required.
Though the unambiguous statutory language "is alone determinative" of the legislative intent, the applicable legislative history "may also be relevant and is not to be ignored, even if words be clear" (Riley v County of Broome, 95 NY2d 455, 463 [2000]). Here, the available legislative history of this provision militates in favor of the same conclusion. In describing the justifications for the Housing Stability and Tenant Protection Act of 2019, the Senate Introducer's Memorandum observes, "For tenants who rent market-rate units, this legislation would ensure that they [... ] have more notice if a landlord wants to bring a court proceeding against them" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 36). This supports the conclusion that the HSTPA's provisions—RPL § 226-c among them—were intended to provide unregulated tenants with additional advance notice of eviction proceedings.
One might argue in favor of Petitioner's position that to find RPL § 226-c applicable even to a landlord that offered a renewal lease with a rental increase of less than 5% would render meaningless the statutory language limiting applicability to higher-increase renewals, in contravention of another canon of statutory interpretation (see People v Giordano, 87 NY2d 441, 448 [1995] ["Under well-established principles of interpretation, effect and meaning should be given to the entire statute and every part and word thereof"]). The court would disagree. This language remains meaningful insofar as it requires that lease renewals with substantial rent increases be offered with adequate advance notice or that their effectiveness will otherwise be delayed.[FN1]
 Lease renewal offers with more modest rent increases can be offered with minimal [*4]notice without penalty. The court's conclusion that RPL § 226-c requires written notice before the commencement of any lease expiration holdover proceeding does not render any part of the statute superfluous.
As noted above, there remains a second question—whether Petitioner's electronic lease renewal offer satisfies its obligations under RPL § 226-c. The court concludes that it does not, for two reasons. First, because it was not served upon Respondent in the manner required under his lease. While § 226-c does not specify how this notice must be served, courts have held that landlords must comply with any notice provisions contained in the lease (Frischer v Goldner, 76 Misc 3d 1226[A] [finding good service where § 226-c notice was served in the manner specified in the lease]). Here, Petitioner's lease with Respondent required that notice pursuant to "any applicable law" must be sent "by registered or certified mail, return receipt requested, or by overnight mail by a nationally recognized overnight carrier" (see Initial Lease, Exhibit 5, § 25). Petitioner's electronic transmission of the lease renewal offer did not comply with this provision.
Secondly, the lease renewal offer was inadequate for the simple reason that it did not include any statement apprising Respondent that Petitioner would seek possession of the premises upon Respondent's failure to execute the renewal lease. A notice of non-renewal on which an eviction proceeding is predicated must be "clear, unambiguous and unequivocal" (City of Buffalo Urban Renewal Agency v Lane Bryant Queens, Inc., 90 AD2d 976, 977 [4th Dept 1982], aff'd 59 NY2d 825 [1983]). Here, the document in question failed to meet this standard.
Therefore, because Petitioner failed to comply with the requirements of RPL § 226-c, this proceeding must be dismissed.
THEREFORE, it is
ORDERED that Petitioner's application for judgment after inquest is denied and the proceeding is dismissed.
This constitutes the decision and order of the court. Petitioner may recover any exhibits from Part G, Room 581, within 30 days of the issuance of this order.
Dated: May 5, 2025
New York, New York
Hon. Adam R. Meyers
Judge, Housing Court

Footnotes

Footnote 1: The effects of this provision seem to echo those of lease renewal offers for rent stabilized apartments. These must be offered to tenants 90 to 150 days prior to the expiration of the current lease in effect (9 NYCRR § 2523.5 [a]). Where a landlord delays in offering a renewal lease, the tenant may elect that the rent increase not become effective until at least 90 days after the offer was made (9 NYCRR § 2523.5 [c][1]).